Commonwealth *v.* Whalen, Appellant (No. 1).

352

Argued March 19, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Paul N. Gardner,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *James McGirr Kelly,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WRIGHT, J., April 16, 1959:

Edward Whalen and Anthony Perpiglia were tried in Philadelphia County on two bills of indictment as follows: No. 1 March Sessions 1958 charging attempted burglary, and No. 222 June Sessions 1957 charging assault and battery with intent to murder. After a four day trial the jury returned a verdict of guilty as to both defendants. Motions for a new trial were filed and overruled. Perpiglia was sentenced on both bills for a total term of 13½ to 27 years. As to Whalen, sentence was suspended on Bill No. 222 June Sessions 1957. On Bill No. 1 March Sessions 1958, Whalen was sentenced for a term of 7½ to 20 years. From that judgment Whalen has appealed.

On May 16, 1957 about 1:30 a.m., a burglary was attempted through the roof of premises at 1305 Germantown Avenue, Philadelphia, owned and occupied by the Monarch Distributing Company. The south side of the Monarch building forms the rear boundary of properties on Thompson Street. Paul Stuhlman, who lives at the corner of Germantown Avenue and Thompson Street, heard unusual noises, saw two figures on the roof of the Monarch building, and called the police. Among other officers, James Armstrong arrived on the scene, saw two figures on the roof, and subsequently attempted to intercept a man running down Thompson Street. Armstrong was shot by this man, identified

by several witnesses as Perpiglia. Other officers apprehended Perpiglia in flight a short distance from the scene. Specimens removed from his clothing and shoes were similar to the material on the roof of the Monarch building. The gun was found in a nearby vacant lot. Mrs. Irene Muller, who lives at 235 West Thompson Street, heard the shot, looked out and saw the figure of a man on the roof of the Monarch building. She then heard the noise of someone climbing down a rear sewer stack pipe located at the junction of the wall of her house with the wall of the Monarch building. This person bumped against the shutters and knocked over the rubbish can as he alighted. Mrs. Muller's rear yard is completely enclosed and accessible only by means of an alley which opens on Thompson Street. Entrance to this alley is through a wooden door having an ordinary Yale type lock and a barrel bolt which was in a locked position. When Mrs. Muller reached the street, she heard someone inside the alley trying to open the door. She signalled to Officers Masztak and Selby. The police threatened to shoot through the door if the person in the alley did not give himself up. Whalen then emerged from the alley. Sgt. Duthill testified concerning a hole in the roof of the Monarch building, and the discovery at that point of a brace and bit and a flashlight. Three drift pins[1] were found in the street near the spot at which Officer Armstrong was shot. When brought together, Whalen and Perpiglia at first denied knowing each other. Each testified in his own defense. Whalen's theory was as follows: He was on his way to a taproom when he saw a man running and heard a shot. He first darted into a "burned-out" building, heard a commo-

---

[1] "Q. What are those three instruments that I have just handed to you? A. They are commonly known as drift pins and are used at times in knocking combinations off of safes."

tion, and came back out. He then ran into the alley at 235 West Thompson Street, the door of which was not locked, and slammed the bolt shut. In the darkness he accidently knocked over the rubbish can. The officers then arrived. Whalen denied that he had been on the roof, or that he had any connection with Perpiglia or with the attempted burglary.

The first contention of appellant's present counsel is as follows: "The evidence tending to connect the appellant with the attempted burglary of the Monarch Distributing Company was not sufficient to sustain the verdict". In support of this contention he cites *Commonwealth v. Williams*, 179 Pa. Superior Ct. 496, 118 A. 2d 228, and *Commonwealth v. Marino*, 142 Pa. Superior Ct. 327, 16 A. 2d 314, neither of which case is controlling in the instant situation. The corpus delicti was clearly established. A felonious intent may be inferred from the effort to break through the roof. See *Commonwealth v. Stefanczyk*, 77 Pa. Superior Ct. 27. While the evidence that Whalen was involved in the attempted burglary is circumstantial, the inference that he was one of the two figures seen on the Monarch building, as stated by President Judge ALESSANDRONI, "is well nigh conclusive". In a criminal prosecution, the evidence is sufficient to warrant a conviction where the circumstances proved are such as reasonably and naturally justify an inference of guilt, and are of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt: *Commonwealth v. Hooe*, 187 Pa. Superior Ct. 330, 144 A. 2d 580. See also *Commonwealth v. LaRue*, 381 Pa. 113, 112 A. 2d 362.

Appellant's second contention is as follows: "The appellant's conviction of assault and battery with intent to kill was improperly submitted to the jury and

sentence was improperly imposed upon the appellant as this conviction was based solely on the appellant's co-defendant, Anthony Perpiglia's conviction of that crime". Passing the fact that Whalen has not appealed from his conviction on Bill No. 22 June Sessions 1957, it was the province of the jury to draw appropriate inferences from the testimony: *Commonwealth v. Chambers*, 367 Pa. 159, 79 A. 2d 201. Counsel argues that the "only inference possible to implicate the appellant with Perpiglia was that they knew each other when they were previously incarcerated in the Eastern State Penitentiary",[2] and that Whalen was not proved "to be either a fellow conspirator, an accessory before or after the fact or a principal in any way connected with the assault and battery charge". The case of *Commonwealth v. Doris*, 287 Pa. 547, 135 A. 313, upon which he relies, lends no support to his contention. Indeed, it was therein held that an attempt to escape was part of the original conspiracy to rob, and that Doris was properly convicted of murder in the first degree, although the fatal shot was fired by another one of the bandits. In the case at bar, both Whalen and Perpiglia were identified as being in the immediate vicinity at the exact time of the crime. The jury was justified in finding from the evidence that they were co-conspirators in the attempted burglary, and that Whalen was responsible for Perpiglia's action in shooting Officer Armstrong in Perpiglia's effort to escape. A criminal conspiracy may be established by proof of the circumstances attending its activities, and each conspirator is criminally responsible for the act of his co-conspirator in furtherance of the common design, even though he may not have been present when

---

[2] Both Whalen and Perpiglia had previous criminal records.

the act was committed: *Commonwealth v. Strantz,* 328 Pa. 33, 195 A. 75.

Appellant's third contention is as follows: "The conviction of your appellant should be set aside by reason of the purposeful suppression of evidence by the Commonwealth which, while in the sole custody and control of the prosecution and while not being exhibited at the trial, was alluded to and incriminated the appellant, resulting in the denial of due process of law". The gist of this contention is that the prosecution failed to reveal the results of the examination of Whalen's clothing and shoes. The Commonwealth offered no evidence as to this examination, and no demand was made that such evidence be produced. Appellant's trial counsel did not attempt in this regard to cross-examine the chemist who testified for the Commonwealth. It is not the duty of a district attorney, at least in the absence of a request, to exhibit the private report of an expert witness: *Commonwealth v. Neill,* 362 Pa. 507, 67 A. 2d 276. Failure of the Commonwealth to produce the clothing and shoes worn by appellant at the time of his arrest did not constitute fundamental error. See *Commonwealth v. Holden,* 390 Pa. 221, 134 A. 2d 868. The only inference to be drawn from the failure of the chemist to testify as to Whalen's clothing and shoes, in the light of his testimony relative to Perpiglia, was clearly favorable to the appellant.

Appellant's fourth and final contention is as follows: "The testimony which convicted your appellant's co-defendant of the crime of assault and battery with intent to kill was improper and therefore your appellant's conviction of the same crime being based solely upon his co-defendant's conviction is likewise improper". Again passing the fact that Whalen has not appealed from his conviction on Bill No. 222 June Ses-

sions 1957, the basis of this contention is that Officer Lafferty was permitted to give hearsay testimony concerning Armstrong's identification of Perpiglia. Immediately after the shooting, Lafferty went to the assistance of Armstrong as he lay wounded, and Armstrong gave Lafferty a description of his assailant. In addition to the fact that Armstrong testified at the trial and was subject to cross-examination, his statement to Officer Lafferty was clearly a part of the res gestae. *Commonwealth v. Gardner*, 282 Pa. 458, 128 A. 87, *Commonwealth v. Goetz*, 129 Pa. Superior Ct. 22, 195 A. 144, and *Commonwealth v. Derembeis*, 120 Pa. Superior Ct. 158, 182 A. 85, relied upon by appellant, do not support his position. A case directly in point is *Commonwealth v. Rumage*, 359 Pa. 483, 59 A. 2d 65, wherein it was held that the declarations of a wounded man, who subsequently died, as to the circumstances under which he had been shot were admissible as "spontaneous utterances springing out of the 'hold-up'. Such declarations are not objectionable because made in response to questions". See also *Commonwealth v. Danarowicz*, 294 Pa. 190, 144 A. 127; *Commonwealth v. Rogozinski*, 387 Pa. 399, 128 A. 2d 28.

In conclusion, we have carefully reviewed this voluminous original record. The case was fairly tried before an able and experienced jurist. The issues were submitted to the jury in a thorough and impartial charge, to which appellant's trial counsel took no exception, and concerning which no complaint is here made. We are all of the opinion that there were no prejudicial errors, and that appellant was properly convicted.

Judgment affirmed.