## Commonwealth *v.* Ballem, Appellant.

Argued May 24, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William H. Turner*, with him *Robert W. Mills*, for appellant.

*Paul R. Sand,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney and *Ernest L. Green,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, June 25, 1956:

Defendant was found guilty of murder in the first degree and sentenced to death. The evidence was sufficient to prove that on or about April 23, 1954, defendant lured John Dopirak to his home for the purpose of robbing him, and that when Dopirak discovered he was trying to steal his money and accused him of it, he, Ballem, shot and killed Dopirak.

On April 27, 1954, a few days after the murder, the police at Sharon Hill found a trunk in a trolley station within the Borough. It contained two packages wrapped in plastic raincoats, each of which contained parts of a human body. Two days later defendant was arrested hiding in the attic of his home in Upper Darby Township.

Ballem contends that his second confession was coerced and therefore inadmissible. Ballem made two confessions. The first confession was a lengthy one consisting of questions and answers. For reasons which will hereinafter appear, defendant does not object to the admission of this confession. Ballem stated therein that he killed in self defense in his home a man whose name he did not know; that the killing occurred on the Thursday or Friday of the week preceding April 30, 1954; that he met the deceased either at the Essex Bar or Dewey's in Philadelphia; that they drank together; that he took the man to his (Ballem's) home where they drank some more; that the deceased went upstairs to the toilet and when he came down he had Ballem's ring on his finger; that he then told deceased to drop everything and get out. Deceased shot at him and Ballem

then shot deceased in the abdomen, and the deceased fell on the floor and some time thereafter died. Ballem dragged the body to his basement and removed and burned the clothing in the furnace. He then got drunk and decided to dispose of the body. He purchased lye and placed it on the hands and over the face, but it did not destroy the features. He then applied a torch. After several hours he decided the torch was not working successfully and he went upstairs and got drunk all over again. After he sobered up, he cut up the body with a saw. He tried unsuccessfully to burn the cut up portions of the body, piece by piece, in the furnace. He burned successfully some parts of the body; then he took sheets and newspapers, put the ashes therein and flushed them down the drain or sewer with a hose. The drain was located in his basement. He then bought plastic raincoats and wrapped therein other portions of the body, some of which he placed in a trunk which he bought and brought home in a taxicab. Other parts he placed in a suitcase which he hid on the third floor of his home. He took other parts of the body, with the raincoats wrapped around them, and rolled them into a creek known as Naylor's Run, Upper Darby, which is four or five blocks from his home. He cleaned and re-loaded his gun so that if it was found no one would know it had been recently fired. He confessed that the gun which was found in his home was the one with which he shot and killed the deceased; he confessed that the torch and the saw which were found in his basement were the torch and saw with which he burned and subsequently dismembered the body of the deceased; and he stated that the gloves found in his home were the gloves which he used so that no finger marks would be found.

Defendant's answers were highly intelligent and gave in great detail his account of the killing and in

particular the details concerning the burnings, dismemberments and hidings of deceased's body; the stores where he bought the trunk, the raincoats, etc. which he used to conceal the crime. There could not be the slightest doubt in the world from the detailed explanation and answers given that Ballem was a very intelligent person, and that he had shot and killed and dismembered a man. There is, we repeat, no claim by Ballem that this confession was not free and voluntary, or that it was in any way or in any degree coerced. It was witnessed by six persons who were present when the confession was made. Probably the reason why no objection was or is made to the admission of this confession is that Ballem stated therein that he shot and killed in self defense.

Ballem made a second confession, after hearing read to him his first confession. With reference to this second confession, the questioning of defendant began about 12:25 p.m. on April 30th and ended a half hour later. It was read by defendant and signed by him at about 2:30 p.m. the same day, namely, April 30th, and was witnessed by five witnesses, all of whom testified that it was made freely and without any coercion.

In this second confession Ballem stated that there was an additional explanation which he wished to offer concerning the actual killing at the time he shot the man in his house, and that he was giving this extra information of his own free will. He then said in question and answer form, that after hearing the man talk about big money he intended to get him drunk, take him back to his home, and after he had gotten him sufficiently stupefied with liquor to rob him of his money, and after he had robbed him to put him in a taxicab and get him out of the house. He then stated that after he arrived home with this man he supplied him with more liquor and attempted to stupefy him further by

putting cigar ashes in the liquor. He then saw the man with his, Ballem's, ring on his finger, which made him all the more anxious to rob the man. "I started going through his brown coat which was on the chair in the living room, for the purpose of finding his wallet which he had given me the impression was full of money. I was very drunk but I knew what I was doing with reference to robbing this man of his money." Just at that time the man walked into the room, and said: "I am going to kill you, you thieving—." Ballem then offered to call it quits. He had gone out of the room when he heard the man coming downstairs, and had gotten his gun. When the man attempted to cock Ballem's revolver which he had stolen from a room in Ballem's house Ballem said: "Well, you asked for it"; fired into his abdomen and killed him. Ballem was standing 4½ to 6 feet away from him when he shot him. This is the statement which counsel for Ballem contends was coerced and therefore inadmissible.

The Court appointed counsel to represent defendant even before he was indicted. Counsel has conscientiously raised and ably argued every point which conceivably could be raised, in order (a) to free his client, or (b) to secure a new trial, or (c) to have him committed to a mental hospital. We shall discuss only those contentions which have any substantial merit.

1. There is no merit in defendant's contention that the corpus delicti and all the ingredients of murder in the first degree were not proved by the Commonwealth. The evidence was sufficient to justify the jury in finding that the defendant killed Dopirak while he was engaged in the commission of a robbery and not, as defendant contended, while attempting to commit larceny, or in self defense. The jury did not have to believe that part of defendant's confession which stated that he shot and killed Dopirak in self defense. In *Commonwealth*

*v. Homeyer*, 373 Pa. 150, 94 A. 2d 743, where the defense was suicide and then dismemberment, the Court said (page 153) : "Defendant, like most defendants, proceeds on the assumption that you must believe all of his statements or confessions; of course, that is erroneous; a jury can believe all or a part of or none of a defendant's statements, confessions or testimony . . . ."

All the necessary ingredients of first degree murder were proved by the Commonwealth: *Commonwealth v. Homeyer*, 373 Pa., supra; *Commonwealth ex rel. Lagana v. Day*, 385 Pa. 338, 123 A. 2d 172. Indeed, the jury could have found a specific intent to kill and therefore first degree murder from "the offender's use of a deadly weapon, for while an intention to kill may be shown by the defendant's express words or declarations or other conduct, such intent may be just as effectively inferred from the deliberate use of a deadly weapon upon a vital part for a manifest purpose: Commonwealth v. Iacobino, supra, . . . Commonwealth v. Troup, 302 Pa. 246, 253, 153 A. 337; Commonwealth v. Green, 294 Pa. 573, 584, 144 A. 743. . . .": *Commonwealth v. Jones*, 355 Pa. 522, 50 A. 2d 317. See also to the same effect *Commonwealth v. Heller*, 369 Pa. 457, 87 A. 2d 287; *Commonwealth v. Kelly*, 333 Pa. 280, 4 A. 2d 805.

2. Defendant contends it was reversible error to exhibit to the jury on a screen a magnified picture of a severed human hand, which clearly showed *a scar* on the burned right hand of the victim severed above the wrist joint. Dopirak had such a scar on his wrist. The original photograph was introduced in evidence without objection; the original was then blown up. It was properly admitted in evidence in order to aid in identifying the victim as John Dopirak and to explain or illustrate the testimony of medical or identifying witnesses. Pistols, fruits of the crime, clothing, parts of

the body of the person killed, everything pertaining to the crime which will aid the jury in its consideration of the (alleged) crime and the guilt or innocence of the accused, is admissible. The admission or exclusion of these objects and particularly of photographs is a matter which is within the sound discretion of the trial Judge, and the fact that a picture is gruesome is not sufficient to exclude it: *Commonwealth v. Capps*, 382 Pa. 72. 114 A. 2d 338; *Commonwealth v. Bibalo*, 375 Pa. 257, 100 A. 2d 45; *Commonwealth v. Smith*, 374 Pa. 220, 97 A. 2d 25; *Commonwealth v. Simmons*, 361 Pa. 391, 65 A. 2d 353; *Commonwealth v. Wentzel*, 360 Pa. 137, 61 A. 2d 309; *Commonwealth v. Ferry*, 326 Pa. 129, 191 A. 130.

3. The District Attorney and other witnesses testified, and the jury must have believed, that defendant had volunteered to give the additional information contained in the second statement and that it was absolutely voluntary. *Turner v. Pennsylvania*, 338 U.S. 62; *Harris v. South Carolina*, 338 U.S. 68; *Watts v. Indiana*, 338 U.S. 49, and other cases relied on by defendant were cases in which defendant was examined for long periods of time, or was held incommunicado, or they contained other facts showing coercion or that defendant had been overreached. All of said cases are clearly inapposite and do not control the instant case. Moreover, "The fact that a confession is made while a prisoner is in the custody of armed police officers will not render it involuntary . . . (Commonwealth v. Jones, 341 Pa. 511), . . . nor is a confession invalidated because the accused was not represented by counsel, no request for such representation having been made . . . (Commonwealth v. Bryant, 367 Pa. 135) . . .": *Commonwealth v. Smith*, 374 Pa., supra.

4. Dr. Albert M. Biele, a psychiatrist who examined defendant, testified as an expert to his medical

conclusion that defendant was suffering from a mental disease and should be confined in a mental hospital. He was then recalled to the stand and asked his opinion based upon the psychological report which Dr. Olive J. Morgan, a clinical psychologist, made upon defendant and as to which she had testified. Dr Biele was then asked what if any conclusions he drew from the clinical psychological reports of Dr. Morgan. Defendant contends that the Court's refusal to permit an answer to that question constituted reversible error. We agree with the Commonwealth that the lower Court correctly sustained the Commonwealth's objection. In cases involving the question of insanity or mental illness, a doctor can express his opinion when it is based upon personal examination and observation, or upon the evidence which is produced under oath in Court at the trial of the case, or when his opinion is predicated upon facts which are hypothetically stated: *Commonwealth v. Patskin,* 372 Pa. 402, 93 A. 2d 704; *Commonwealth v. Logan,* 361 Pa. 186, 63 A. 2d 28; *Commonwealth v. Neill,* 362 Pa. 507, 67 A. 2d 276. A medical expert may give his professional judgment if based upon his own examination of the patient but not on what others have told him, even though the patient had given him his case or life history; *Commonwealth v. Patskin,* 372 Pa., supra; *Williams v. P. R. T. Co.,* 257 Pa. 354, 101 A. 748; *Becker v. P. R. T. Co.,* 245 Pa. 462, 91 A. 861; *McMinis v. P. R. T. Co.,* 288 Pa. 377, 135 A. 722; *Coyle v. Commonwealth,* 104 Pa. 117; *Howarth v. Adams Express Co.,* 269 Pa. 280, 112 A. 536. There is no merit in this contention of defendant.

5. Defendant contends there must be a new trial because the jury in the course of their deliberation in the jury room, after the conclusion of the trial, submitted to a tipstaff or clerk of the Court the following writing:

"Is murder in the first degree, life imprisonment, never to be paroled or free in his lifetime? Is this a legal possibility?"

The Court was not in session and the clerk telephoned the Trial Judge at his home. It was the recollection of the Trial Judge that he merely told the clerk to inform the jury that he could not answer that question. The clerk believed that he informed the jury that the Trial Judge had said: "We cannot answer that question. It is out of the case." This did not constitute reversible error. This Court has said several times that it is improper for a Trial Judge to answer such a question: *Commonwealth v. Mills*, 350 Pa. 478, 39 A. 2d 572; *Commonwealth v. Johnson*, 368 Pa. 139, 81 A. 2d 569; *Commonwealth ex rel. Milewski v. Ashe*, 363 Pa. 596, 70 A. 2d 625; *Commonwealth v. Johnson*, 348 Pa. 349, 35 A. 2d 312.

It is undoubtedly the law that in a capital case a prisoner has the right to meet the witnesses face to face and to be present at every stage of the trial including of course the rendering of the verdict: *Commonwealth v. Diehl*, 378 Pa. 214, 107 A. 2d 54; *Diaz v. United States*, 223 U.S. 442. See also *Commonwealth ex rel. Milewski v. Ashe*, 363 Pa., supra. However, in this instance the Court was not in session; no evidence was given in the absence of the defendant; and the Court made no charge in his absence. Under these circumstances, the refusal of the Trial Judge to answer the jury's question without convening Court and without summoning the defendant was, at best for defendant, harmless error: Cf. *Commonwealth v. Kelly*, 292 Pa. 418, 141 A. 246; *Commonwealth v. Cisneros*, 381 Pa. 447, 453, 113 A. 2d 293; *Commonwealth v. Barnak*, 357 Pa. 391, 419, 54 A. 2d 865; *Kotteakos v. United States*, 328 U.S. 750, 764.

6. Defendant contends that the lower Court erred in refusing to commit him to a mental hospital in accordance with the provisions of the Mental Health Act of 1951 as amended. Upon application of defendant a Commission was appointed by the Court to examine him. The Commission consisted of two psychiatrists and a member of the Bar. He was examined by the Commission on September 27, 1954. It filed a report on October 22, 1954 in which it made the following pertinent findings: "1. He is not mentally defective; indeed, he is above average intelligence. 2. He has no evidence of organic disease of the nervous system. 3. He is abnormal, immature, paranoid personality. He is mentally ill. 4. He is not insane. He can distinguish right from wrong. 5. Despite his mental illness he is able to comprehend his position with relation to the crime of which he stands accused. 6. Despite his mental illness he is able to confer with his counsel in an intelligent manner to prepare his defense. 7. Despite his mental illness he is able to make a rational defense to the crime of which he stands accused. 8. He is of criminal tendency."

On November 22, 1954, the lower Court accepted the report and the findings of the Commission "and further, after a careful consideration of the said report and the evidence taken before said Commission on which said report is based, it is ordered, adjudged and decreed as follows:

".. . 2. That this Court finds in its sound discretion that it is not proper nor required that the defendant Francis X. Ballem be committed to a hospital for mental illness, and that therefore this Court refuses to commit the said defendant Francis X. Ballem to a hospital for mental illness."

In *Commonwealth v. Gossard*, 385 Pa. 312, 123 A. 2d 258, the Court said:

"While the appointment of a commission is not mandatory, a Court has no right to arbitrarily or capriciously refuse to appoint a commission; or, if a commission is appointed, it has no right to arbitrarily or capriciously reject the findings or conclusions of the commission. However, it is well to recall that 'If a commission is appointed, its findings are advisory and not mandatory upon the Court—under the Act [of 1951] it is the Court and not the psychiatrist or the Sanity Commission which must be satisfied that the petitioner is insane or mentally ill. (Subsection (d) of §345). . . . Upon appeal we should reverse a lower court only for an abuse of discretion or an error of law': Commonwealth v. Patskin, 375 Pa., supra, 368, 375, 377. See also to the same effect: Commonwealth v. Moon, 383 Pa. 18, 117 A. 2d 96.

. . .

"The new standard which the Legislature promulgated to guide the commission and govern the Court as to whether defendant was mentally ill [and should be committed] is stated in Commonwealth v. Moon, 383 Pa., supra, at pages 28, 29 . . .

. . .

". . . At first glance the wordage of the Act would make it appear that every conceivable type of mental illness, with the exception of those specifically excluded, would fall within its scope and require commitment. Upon closer scrutiny it becomes evident that *the controlling factor is the degree or extent to which the mind is affected by the mental disorder* and not the bare existence of symptoms which would induce a psychiatrist to diagnose a mental illness. . . . having resolved that appellant was mentally afflicted, the determinative issue was whether that illness so lessened his capacity to use his customary self-control, judgment and discre-

tion as to render it necessary or advisable for him to be under care."

We find no abuse of discretion or error of law by the lower Court. We may add that the very detailed and highly intelligent confessions made by Ballem conclusively demonstrate that if he had a mental illness it did not fall within the provisions of the Mental Health Act requiring or warranting commitment to a mental institution.

7. We have read the charge of the lower Court, and find no reversible error therein. The rights of the defendant were fairly and adequately protected by the Court in its charge to the jury and throughout the entire case.

. We have considered all of the other contentions made by defendant but deem further discussion unnecessary.

Judgment affirmed.