## Commonwealth *v.* Rogozinski, Appellant.

Argued November 12, 1956.   Before STERN, C. J.,
JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James E. Buckingham,* with him *Donald T. Puckett,*
for appellant.

*George W. Atkins,* District Attorney, with him
*Nevin Stetler,* First Assistant District Attorney, for
appellee.

OPINION BY MR. JUSTICE ARNOLD, December 29,
1956:

Defendant appeals from judgment of sentence upon
a jury's verdict finding him guilty of murder in the
first degree with recommendation of life imprisonment.

Decedent was employed by his son in a gas station
operated by him in Dillsburg, York County.   At about
5:15 P.M. on April 23, 1955, the son left decedent alone

in the station and proceeded to his home to eat supper. At approximately 5:40 P.M. he received a telephone call from his father and returned to the station within two minutes. Arriving at the station he observed his father standing at a doorway wiping blood from his face; that "His right eye was protruding out of his head"; that blood was coming from the back of his head; that there was blood in various parts of the station; that a jack handle, normally kept some distance away, was found near a pool of blood in another part of the room; and that all money had been taken from the cash register. In the course of his examination he also testified that upon arriving he "Immediately . . . saw he [decedent] was beaten up" and that decedent told him "he was robbed."

Commonwealth's testimony established that decedent had suffered fractures of both the front and back of his skull, and that his death was caused by traumatic damage to the brain. Its testimony also was to the effect that the injury could have been caused by a blunt instrument.

It was further established that defendant was in the station at approximately 5:00 P.M. and until 5:30 P.M., at which time the witnesses left decedent and defendant alone in the station. Additionally, it was shown that at approximately 6:30 P.M. defendant was within a twenty-minute walk from the station, and at 6:48 P.M. within one-half mile of the station. Thereafter defendant hitch-hiked to Harrisburg, thence to Lewistown and to Mount Union, where he was apprehended four days later.

Defendant first denied, but later admitted, being in the station and that he took the money from the register. He denied striking the decedent, declaring that as he left he saw decedent fall in the station.

Defendant first contends that the court erred in refusing to sustain his demurrer to the evidence and his motion for binding instructions, on the ground that the evidence was insufficient to sustain conviction. Specifically, he would have this Court declare there was grave doubt that a felonious homicide did occur, likening the case to *Commonwealth v. New,* 354 Pa. 188, 47 A. 2d 450. But the basis for the Court's decision in the cited case does not exist here. As quoted by appellant at page 198, we there declared: "Furthermore, if he [defendant] was with Lee Joe when he was killed, that fact alone is not sufficient to convict him of Lee Joe's murder *unless there was evidence that no one else was with Lee Joe at that time."* (Italics supplied). Here, the proof was that within a very few moments of the occurrence, decedent and defendant were the only persons in the station. One Commonwealth witness testified that they were the only ones in the station when he left to drive to his home five blocks away, where he arrived at 5:45 P.M. With the call from decedent to his son established at 5:40 P.M., and with defendant's admission that no one else was in the station after the witness left, and that the injuries were sustained when defendant was alone with the decedent, the evidence was clearly sufficient. "The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt—*not that they need be absolutely incompatible with his innocence—and that doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances'.":* *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A. 2d 95. As in the case of *Commonwealth v.*

*Wentzel,* 360 Pa. 137, 147, 148, 61 A. 2d 309, "To hold that the evidence here presented did not warrant the submission of this case to the jury would be almost tantamount to a complete elimination of convictions based entirely upon circumstantial evidence, however strong and conclusive."

Defendant's contention that the medical testimony did not establish that the injuries resulted from the application of force by a blunt instrument is not founded in fact. The evidence was that they were not caused by "a sharp instrument"; that they could have been caused by a "blunt instrument"; and that the force was "such as one that might occur in a fall from a *great height and landing or falling on the head;* or in an automobile accident . . . sustained when the automobile had been moving at a rapid rate of speed and came up against a solid force"; that these injuries resulted from "two impacts"; that decedent "couldn't, from standing on the ground, do that much damage to his brain and skull" by falling. The medical examiner distinctly ruled out a fall as the cause. It is to be noted also, that the opinion of the doctor was based upon full examination of the decedent, not upon any hypothetical statement of facts, and was proper: *Commonwealth v. Ballem,* 386 Pa. 20, 28, 123 A. 2d 728; 20 Am. Jur. Evidence, §871; 32 C.J.S. Evidence, §534; Pennsylvania Evidence, Henry, Vol. 1, Section 573. See also *Tabuteau v. London Guarantee & Accident Company, Limited,* 351 Pa. 183, 40 A. 2d 396.

Defendant assigns as error the refusal of the court to declare a mistrial because of the son's statement that when he arrived at the station he "saw [that the deceased] was beaten up"; and also complains that the son was permitted to state that when he first saw his father the latter declared that "he was robbed." As to

the first of these, the court excluded, and instructed the jury "to pay no attention" to the testimony. The court committed no abuse of discretion; and having admonished the jury to disregard it, "it must be taken for granted that the jury obeys the instruction and that [if it was error] . . . was harmless error": *Commonwealth v. Fugmann,* 330 Pa. 4, 17, 18, 198 A. 99.

Decedent's declarations that "he was robbed," and "he took all the money," were admitted as res gestae. Defendant apparently objects only to the word "robbed" in that it was a "conclusion or an opinion." We cannot find it objectionable that the word used was "robbed" rather "burglarized." The declaration was that of one not learned in the law, and could not have been misunderstood, in its effect, by the jury. It came spontaneously from decedent's lips under the shock and excitement of inflicted violence impelling its utterance, and so soon thereafter as not to break the continuity of events, and was therefore admissible. See *Commonwealth v. Edwards,* 380 Pa. 52, 110 A. 2d 216.

The court correctly refused to strike the son's testimony regarding the changed position of the jack handle. Defendant's contention is based upon the assertion that there was no proof the jack handle was actually used in the assault. However, it was an element to be considered by the jury under proper instructions. The court did charge the jury that "No blunt instrument was found . . . There was a jack handle there upon the floor, but [the Commonwealth witness] . . . frankly admitted *there was nothing upon it that would indicate in any way it had been used, if blows were actually struck* . . . ; it is true, if there was such blunt instrument used, the defendant had an opportunity to discard it." (Italics supplied). This was a more favorable disposition than defendant had a right to expect.

Defendant complained that the court erred in sustaining Commonwealth's objection to the examination of his medical expert in seeking to elicit from him a declaration that the injury to the front of the skull could have been caused by a fall. The court's action was based on the ground that there had been no competent testimony that decedent had fallen. But, after defendant testified to a fall, the doctor was permitted to testify fully as to the cause, and declared that the injury could have so resulted. The question is one merely of order of proof; and defendant was in no wise prejudiced. His contention that he was forced into taking the stand by virtue of the ruling is quite tenuous, to say the least. It was not a circumstance to "force" such action on his part, particularly in view of the evidence then before the jury. *Cf. Commonwealth v. Neill,* 362 Pa. 507, 67 A. 2d 276.

When sustaining the objection, the court instructed defendant's counsel: "You *can* put the defendant on the stand and he will testify to that, then the doctor's testimony becomes competent, but until that time it can't be competent." Thereupon defendant's counsel stated: "May it please the court, the Commonwealth's own witness brought out the fact that there was a fall." The court then stated: "Yes, they said that he said so. We first have to have the defendant's sworn testimony to the fact that there was a fall." Defendant now contends that such colloquy was reversible error, although no objection was made at trial. The court did not, as contended, "comment in the presence of the jury upon defendant's right to testify," but was merely explaining the basis of objection and the means by which the testimony could be made competent. Thereafter the witness was withdrawn and the defendant voluntarily took the stand. There was no error in this. *Cf. Johnson v. The*

*Commonwealth,* 115 Pa. 369, 395, 9 A. 78, where, on the right of a defendant to remain silent, it was held: "Having thus *waived* the right of objection and taken the chances of a favorable result, it would be contrary to every rule of practice to permit him to take advantage of what was done, even if it was erroneous."

Lastly, defendant assigns as error that the court failed "to more fully charge the jury as to all possible verdicts after the jury interrupted its deliberation to ask the court a question relating to defendant's sentence". It is to be noted that no attack, in this regard, can be made upon the full charge of the court. All possible verdicts had been fully and clearly explained and admitted to the jury. Defendant's contention arises from the following:

"The Court: Ladies and Gentlemen, the defendant is in court and the court understands the jury desires to ask the court something.

"Dorothea E. Bentzel, Juror Your Honor, the jury would like to ask a question of whether . . . Can life sentence be given without recommendation for parole, or do we have no power over that?

"The Court: Your only power is to determine whether or not you find the defendant guilty of murder in the first degree, you fix the penalty, and that is either death or life imprisonment. You have nothing further to say about that."

A reading of the charge, and due consideration given to the manner in which the question was put to the court, leave no doubt that the jury fully understood what verdicts it could return. It would be an insult to any jury such as this to declare that the foregoing colloquy was taken to limit it to a consideration only as to whether he was guilty of murder in the first degree.

Furthermore, no additional charge in that regard was requested, nor was any objection made at the time.

The defendant was fairly tried. The case was submitted to the jury under a full and accurate charge which in some instances was more favorable to him than it needed to be, and his guilt was established. We have reviewed the law and the evidence, under the Act of February 15, 1870, P. L. 15, 19 PS §1187, and find that the verdict of the jury is amply supported by the evidence.

Judgment of sentence affirmed.

Mr. Justice MUSMANNO dissents.