Commonwealth *v.* Finnie, Appellant.

Argued April 21, 1964. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Charles E. Friedman*, with him *Herbert S. Cohen*, for appellant.

*John A. F. Hall*, Assistant District Attorney, with him *Martin H. Lock*, District Attorney, for Commonwealth, appellee.

Opinion by Mr. Chief Justice Bell, July 1, 1964:

Albert Finnie pleaded guilty to an indictment charging him with the murder of George Washington Ford.

The three-Judge Court (sitting without a jury), after hearing the evidence, found defendant guilty of murder in the first degree. After hearing all pertinent facts about the crime and the criminal, and after arguments of counsel, the Court fixed the penalty at life imprisonment. From the judgment and sentence of the Court defendant took this appeal.

Appellant makes three contentions. His principal contention is that he was so drunk that he did not have and could not form an express intent to kill, which in a non-felony murder case is necessary for first degree murder: *Commonwealth v. Carroll,* 412 Pa. 525, 194 A. 2d 911; *Commonwealth v. Gooslin,* 410 Pa. 285, 189 A. 2d 157. In other words, appellant contends that he could not be found guilty of murder higher than murder in the second degree. He also contends that he did not kill Ford but merely shot in the air to scare him. Finally, he contends, equivocally, that he shot Ford in self-defense induced by "reasonable" fear of what Ford might do to him.

We shall briefly summarize the testimony in the light most favorable to the Commonwealth: *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338.

The murder occurred at about 6 a.m. in the vicinity of Sixth and Delaware Streets, Harrisburg. Ford was found lying on the street dead from two bullet wounds.

Finnie and Ford were in the J. & L. Restaurant, which is located in Harrisburg near the corner where the murder occurred. Several other persons were in the restaurant at that time, but since they were admittedly drunk, it is unnecessary to discuss what they remembered. Appellant and Ford had been drinking and got into some kind of an argument about pouring and cutting concrete. They called each other some vile names. The owner of the restaurant ordered appellant and Ford to stop their noise or go outside. Finnie thereupon jumped up and said, "Well, I will be back."

Finnie then left the restaurant and returned in about 12 or 15 minutes. When Finnie came back he had an overcoat on and his hands in his pants pockets. Ford said "Did you get it?"

"A. . . . Finnie said, 'Shut your god damned mouth,' and at that time Mr. Lawyer came back and said, 'You are going to have to take that outside.' This is the second time. And then Finnie looked at Ford and said, 'Well, *I will be waiting on you outside.'\** . . . *Finnie was walking past up and down past the door. . . .* A. . . . And then Ford said, 'There he is again,' and at that time Dennis went outside. A. . . . Dennis stayed out, I would say about ten minutes. He came back inside and he said, *'I would advise nobody to go outside.'* He said, 'I wouldn't go outside, nobody.' What they talked about, I don't know."

Robert C. Harclerode, who was in the restaurant and was the only person who had had nothing to drink, testified: "A. . . . And then Ford . . . said, *'There he is again.'* He said, 'I am not ascared of him'; he said, 'I am going out.' When he went outside I was still standing by the ice cream counter. BY THE COURT (Judge SHELLEY) : Q. Well, did Ford go out? A. Yes, Ford went out then. Then I was still standing beside the ice cream counter, and then about three minutes, I would say, *I heard two shots.* Then I went to the front door; it was a glass door. I looked out the door, and *then I saw Finnie had his one hand, his right hand, I would say, round Ford's collar, dragging him towards Sixth Street, and when I looked again I saw something silver in his hand; I don't know whether it was a gun or not, but I heard two shots.* Q. Two more? A. Two more shots. BY THE COURT (Judge HERMAN) : Q. *You heard four shots altogether?* A. Yes. BY THE COURT (Judge SHELLEY) : Q. You say you saw Finnie dragging Ford?

---

\* Italics, throughout, ours.

A. Towards Sixth Street; he was in Delaware Street. . . . And then I heard two more shots. . . . A. . . . After I heard the two shots I closed the door and went back in . . . . I said, *'That guy out there is killing him out there,'* and that is when we all went outside. . . . A. He had Ford by the collar, like that (indicating), and *then I saw this shiny thing and then I heard two more shots.* BY THE COURT (Judge SHELLEY) : Q. And you said that Ford looks like he was out? A. He looked like he was paralyzed, yes, sir. BY MR. HALL: Q. Where did Mr. Finnie go after the shots were fired? A. . . . we all went outside. Finnie was standing approximately about thirty-five feet from the body in the alley, back in Delaware Street. Then when I walked up and looked closer I heard Ford groaning, and I looked down and when people gathered around then I didn't see Finnie any more."

Harclerode further testified that appellant and Ford had been talking normally in the restaurant; they were not staggering, and neither of them was really drunk.

In *Commonwealth v. Carroll,* 412 Pa., supra, the Court, quoting from *Commonwealth v. Gooslin,* 410 Pa., supra, pertinently said (pages 530-531) : ". . . 'Murder', . . . 'is defined as an unlawful killing of another with malice aforethought, express or implied.' The legislature divided murder into two classifications, murder in the first degree and murder in the second degree; and provided that (1) all murder perpetrated by poison or lying in wait; or by any other kind of wilful, deliberate [and] premeditated killing, or any murder which shall be committed in the perpetration of or attempt to perpetrate certain specified felonies [arson, rape, robbery, burglary, or kidnapping], is murder in the first degree and (2) every other kind of murder is murder in the second degree: Act of June 24, 1939.

" ' "Malice express or implied is [the hallmark] the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances. [Malice is present if the defendant had an intent to do the deceased serious bodily harm: Commonwealth v. Drum, supra; Commonwealth v. Dorazio, 365 Pa. 291, 74 A. 2d 125].

" ' " " 'The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, . . .: [citing numerous authorities]. . . .

"In Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861, the Court said (page 208) : ' ". . . '. . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. ". . . It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: [citing numerous authorities]." ' " '

"In Commonwealth v. Tyrrell, 405 Pa. 210, 174 A. 2d 852, the Court said (pages 212-213) : 'The essential difference in a non-felony murder-killing between murder in the first degree and murder in the second degree is that murder in the first degree requires a specific intent to take the life of another human being: Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728;

Commonwealth v. Dorazio, 365 Pa., supra; Commonwealth v. Malone, 354 Pa., supra; Commonwealth v. Chapman, 359 Pa. 164, 58 A. 2d 433; Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317; Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823.'

"The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom, and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being: Commonwealth v. Tyrrell, 405 Pa., supra; Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65; Commonwealth v. Nelson, 398 Pa. 359, 152 A. 2d 913; Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Heller, 369 Pa. 457, 87 A. 2d 287; Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317."

After appellant was arrested that evening he gave a statement to the police which, to all intents and purposes, was the same as he testified to on the witness stand. He testified that during a 10 hour period, several hours of which were devoted to sleeping, he had had about 17 shots of whiskey plus 3 bottles of beer, plus a lot of wine, and "was feeling pretty good". Nevertheless, he remembered *in detail* everything that occurred, except that he said he did not remember going to his home which was nearby and getting his gun which he always kept loaded under his mattress. He walked back toward the restaurant and then discovered that he had his gun with him. He met a witness, Dennis, who advised him to return home and he took his advice and started to return home. He then noticed that Ford was following him and when Ford kept coming after him he fired two shots in the air to scare him; then he fired a third shot—he doesn't know where—to scare him. After that Ford, who had been quite

a distance away from him, dared Finnie to shoot and grabbed for Finnie's knee, so Finnie shot a fourth time —but he doesn't know where. Finnie then walked home.

"...' "'... "It has become customary for a defendant in his argument before an appellate Court to base his claims and contentions upon his own testimony or that of his witnesses even after a jury has found him guilty. This, of course, is basic error. ...'"'"'

"Moreover, it is well settled that a jury or a trial Court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness: [citing many cases]": *Commonwealth v. Kirkland,* 413 Pa. 48, 57-58, 195 A. 2d 338.

The three-Judge Court found appellant's testimony of the shooting to be incredible; the record certainly confirms its opinion in this respect. Although he had been convicted of larceny in 1934 and of carrying firearms in 1957, he was a good steady worker and had a good reputation, according to his character witnesses.

When the hereinabove quoted principles are applied to the evidence in this case, the verdict of the three-Judge Court finding defendant guilty of first degree murder was certainly justified, as was the penalty and sentence of life imprisonment. We find no error of any kind and no merit in any of appellant's contentions.

Judgment and sentence affirmed.