Opinion by
 

 Cunningham, J.,
 

 On the evening of June 10, 1937, one Raymond Mc-Cann died in a vacant house on Haverford Avenue, Philadelphia, from wood alcohol poisoning.
 

 At the September Sessions, 1937, of the court below, Ned Shiroff, the proprietor of a painter’s supply store, was placed on trial, before Millar, J., and a jury, upon an indictment charging him with involuntary manslaughter, upon the theory that he sold McCann the denatured alcohol which caused his death, knowing it was dangerous to life if used as a beverage and' that he intended to so use it.
 

 At the conclusion of the commonwealth’s testimony, counsel for the defendant demurred to the evidence; the assistant district attorney conducting the trial conceded there was “no direct evidence of the sale,” but contended he had shown facts and circumstances from which the inference that defendant had sold McCann the liquid which caused the latter’s death could reasonably and consistently be drawn; the trial judge held that the facts and circumstances proven and relied upon by the commonwealth were not inconsistent with the hypothesis or possibility that McCann procured the alcohol from a source other than by purchase from the defendant and accordingly sustained the demurrer and discharged the defendant; this appeal by the commonwealth followed.
 

 In view of the disposition of the case below, we are not called upon to decide whether the commonwealth would have made out a case of involuntary manslaughter even if it had fully supported its theory by
 
 *567
 
 sufficient evidence. That inquiry is not involved upon this appeal. Regardless of the question whether the commonwealth would have been entitled to go to the jury upon proof of the sale, it is clear it could not do so unless its evidence was legally sufficient to show the defendant was directly responsible for the possession by McCann on the day of his death of the liquid which caused it.
 

 This case is not affected by the recent Act of June 5, 1937, P. L. 1703, 19 PS §481, (Supplement), to the effect that if a demurrer to the evidence is overruled, “such decision shall be deemed interlocutory only, and the case shall proceed as if such demurrer had not been made.” It is still the law that “for the purpose of deciding upon a demurrer,” it shall be “deemed to be an admission of the facts which the evidence tends to prove or the inferences reasonably deducible therefrom” ;
 
 Com. v. Williams,
 
 71 Pa. Superior Ct. 311, 313;
 
 Com. v. Ernesto et al.,
 
 93 Pa. Superior Ct. 339, and cases there cited. Nor can there be any doubt that the commonwealth may appeal when a demurrer has been sustained. See
 
 Com. v. Kolsky,
 
 100 Pa. Superior Ct. 596, 599, where the matter was fully considered.
 

 Our review of the evidence, in the light of the principles applicable to all cases in which the commonwealth relies upon circumstantial evidence, has satisfied us that the demurrer was properly sustained. The proofs of the commonwealth may be thus summarized: McCann and two companions, James Neeson and Edward Radwell, were members of a “gang” who had long made a practice of buying denatured alcohol, diluting it with water and drinking the mixture. On June 10, 1937, they had been drinking since ten o’clock in the morning. McCann had brought with him a quart bottle bearing the label, “Ned’s Quality Paint Store, Denatured Alcohol, Poison, — Paints, Brushes and Glass, 6214 Market Street,” from which he and his
 
 *568
 
 companions drank until McCann collapsed and died.
 

 Neeson had known the defendant by sight as “Ned” for a year previous, and, in company with McCann, had upon at least three occasions purchased a quart of denatured alcohol from him. At the time of these purchases nothing was said; Neeson would hand Shiroff a quarter if he wanted a quart, fifteen cents if a pint, and defendant would fill and deliver the bottle.
 

 Neeson had not been in defendant’s store within a week or ten days prior to June 10th, although, over a period of five months before that, he had been there four or five times with McCann. He did not know where McCann got the bottle from which he drank the day of his decease; all he knew was that he brought it with him that morning and that defendant’s store was the only place the witness “knew him to be buying it.” On previous occasions McCann, as well as other members of the “gang,” had gone into defendant’s store and come out with a bottle of denatured alcohol bearing defendant’s label.
 

 Eadwell testified he often purchased bottles of denatured alcohol from defendant, similar to the bottle from which the decedent drank on June 10th. He also had frequently seen McCann go into defendant’s store and emerge with a bottle of denatured alcohol bearing defendant’s label. When Eadwell made his purchases no conversation ever took place between defendant and himself, except that defendant once asked him if he “got sick from it.” Eadwell never went into defendant’s store with McCann.
 

 Two detectives who had investigated McCann’s death were called by the commonwealth. Detective Kehl testified the defendant, while under arrest and in a general way, admitted “he knew the men were buying it and he knew they were drinking it.” The other detective testified that, although defendant had not specifically admitted making any sales, he had stated to hint
 
 *569
 
 “if they want to drink it that is their fault, if they want to commit suicide.” This witness noticed approximately a hundred empty bottles on a vacant lot adjoining the house in which McCann died, all bearing defendant’s label.
 

 From this review of the testimony it is clear there was no direct evidence that McCann purchased the particular bottle from which he and his companions drank on June 10th from the defendant.
 

 The pinch of the case is whether all the circumstances shown by the commonwealth — that the bottle from which the deceased drank the day he died bore defendant’s label and was otherwise similar to other bottles of denatured alcohol sold on numerous previous occasions to McCann, Neeson, Radwell, and other members of the “gang,” under such circumstances that defendant knew, or should have known, the contents were being used for beverage purposes — are not only consistent with atnd pointed to the conclusion that McCann purchased the bottle from which he drank on June 10th from defendant, but are also inconsistent with any hypothesis other than that the defendant sold that particular bottle to McCann. A strong suspicion that he did so is not sufficient. See
 
 Com. v.
 
 Byers, 45 Pa. Superior Ct. 37, 38;
 
 Com. v. Pane et al.,
 
 110 Pa. Superior Ct. 367, 371, 168 A. 510;
 
 Com. v.
 
 Pogach, 119 Pa. Superior Ct. 510, 511, 180 A. 126, and
 
 Com. v. Bardolph et al.,
 
 326 Pa. 513, 192 A. 916. The Pogach case was one in which it was sought to sustain a conviction, for burning merchandise with intent to defraud an insurer, by circumstantial evidence. This court there said: “The hypothesis of guilt should flow naturally from the facts and circumstances proven and be consistent with all of them. The evidence must be such as to exclude
 
 ‘to
 
 a moral certainty’ every hypothesis save that of guilt; i. e. the circumstances shown must not only all be consistent with and point to the guilt
 
 *570
 
 of the accused but they must also be inconsistent with his innocence.”
 

 We agree with the court below that the evidence upon this record does not measure up to the established test. It does not exclude several hypotheses consistent with defendant’s innocence of having sold McCann the denatured alcohol which caused his death. For instance, McCann could have purchased the bottle from defendant on a previous occasion, consumed the contents and refilled it with alcohol obtained elsewhere; he might have obtained the bottle from someone who legitimately purchased it from defendant for commercial use; or he might have picked up one of the many labeled bottles shown to have been lying around and filled it with denatured alcohol procured from another source.
 

 The commonwealth was not required to exclude every possible hypothesis which might be conceived, but it had the burden of connecting this defendant with the cause of McCann’s death beyond a reasonable doubt. In our opinion, it did not successfully carry this burden.
 

 Judgment affirmed.