Commonwealth, Appellant, v. Deyell.

564

Argued March 15, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*A. J. DeMedio,* Assistant District Attorney, with him *Michael A. Hanna,* District Attorney, for Commonwealth, appellant.

*Robert L. Ceisler,* with him *John Solomon,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 4, 1960:

The defendant was indicted and tried for the murder of Rose Popiolkowski Price. At the conclusion of the Commonwealth's case, the trial judge sustained a demurrer to the evidence because the corpus delicti had not been established. The Commonwealth appeals.

In evaluating the correctness of the court's ruling in sustaining the demurrer, the evidence must be read in the light most favorable to the Commonwealth's case: *Commonwealth v. Shiroff,* 131 Pa. Superior Ct. 565, 200 Atl. 204 (1938). Substantially, the Commonwealth's evidence proved the following facts. The deceased, about 43 years of age, was last seen alive by others than the defendant on Wednesday, February 18, 1959, about two o'clock a.m., in the Canon Cafe, Canonsburg, Washington County, Pennsylvania. She never returned to her living quarters or visited her usual habitats again. Because she lived an independent type of existence without close associations, no one was sufficiently interested to inquire into her disappearance or to report it to the police and, consequently, no investigation ensued immediately to discover her whereabouts. On May 29, 1959, about eight-fifteen o'clock p.m., two men, out berry picking, found her dead body in an isolated, uninhabited section of the county, in the area of an old cemetery.[1] A coat was draped over the shoulders and covered the lower part of her face and upper torso. Branches had been broken off a nearby tree and thrown over the body in an attempt to cover it from view. The left leg was curled or drawn up at right angles to the remaining portion of the body, with clothing disarranged. A medical pathologist performed an autopsy on May 30, 1959. He testified that the re-

---

[1] The clothing on the body and accessories were identified as being those of Rose Popiolkowski Price and the identity of the body, for purposes of this case, was admitted by the defendant.

mains consisted of a skeleton, with some partially mummified skin and a few portions of soft tissue remaining. He described the remains as "largely skeletonized" . . . "but not completely decomposed."[2] He estimated that the body had been dead and exposed approximately two months. He concluded that the skeleton was that of a female, approximately 45 years of age, with reddish brown hair. When asked to give his opinion as to the manner and cause of death, he said that death was probably SUDDEN, "due to natural causes or violent causes." He deduced this from the fact that the left leg was drawn up and not relaxed. He testified that there was no evidence of direct violence to the skull but that the "disarticulation or disorganization or falling apart or whatever you want to call it, was more advanced in the neck bones than in any other part of the skeleton." His opinion was that there had been something wrong with the neck first and that a hemorrhage near these joints would cause neck bones to decompose first. He then specifically stated that he could not render a firm medical opinion as to the cause of death.

The defendant lived in the house nearest (approximately three-tenths of a mile) to the site where the body was found. He was questioned, with others, as to whether or not he knew anything about the body found nearby and replied in the negative. On June 11, 1959, he was taken into custody by the State Police and county authorities and, when questioned, denied having known the decedent during her lifetime and ever having been in her company. (This was contrary to information received by the police from other sources.) He was kept in custody, questioned every

---

[2] When the body was moved to be placed in the undertaker's pouch, it broke into four pieces and individual bones of the fingers had to be picked up separately.

day, and finally, on June 18, 1959, he gave the police officers a written statement wherein he admitted being with the deceased on the early morning of February 18, 1959, the day of her disappearance. He said they met and drank together in two bars in Canonsburg and later drove out and "parked" in the area where the body was subsequently found; that the decedent resisted his advances, despite her earlier promises to engage in a sexual relationship for a price; that she got out of the automobile and ran up the road; that he ran after her and when he caught up with her, she was lying motionless on the road; that he felt her pulse; didn't know what had happened to her; became excited and scared; pulled the body off the roadway into a field; covered the body with branches and left. These admissions, realistically appraised, form a chain of circumstances which strongly point the ugly finger of suspicion at the defendant as having feloniously caused the unfortunate death of Rose Popiolkowski Price. However, when carefully analyzed, they constitute suspicion, at most. There are too many gaps, and proof of one vital element at least is missing. Too much is left to conjecture, and an individual cannot, consistent with our well-established and greatly cherished principles of government, be guessed into the electric chair or the penitentiary.

To sustain a charge of murder the Commonwealth must produce sufficient competent evidence to establish beyond a reasonable doubt three distinct elements: (1) that an identified person is dead; (2) that the death of the person was criminally caused by the felonious act of another; (3) that the accused is the responsible party or one of the parties responsible: *Commonwealth v. Turza*, 340 Pa. 128, 16 A. 2d 401 (1940); *Commonwealth v. Gardner*, 282 Pa. 458, 128 Atl. 87 (1925). The corpus delicti consists of proof of the first two: namely, that the person because of

whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances directly indicating that it was criminally caused by someone: *Commonwealth v. Lettrich,* 346 Pa. 497, 31 A. 2d 155 (1943). The corpus delicti must first be established before extra-judicial confessions or admissions connecting the accused with the crime are admissible into the evidence. However, the corpus delicti, like other facts, may be shown by circumstantial evidence: *Commonwealth ex rel. Lagana v. Day,* 385 Pa. 338, 123 A. 2d 172 (1956); *Commonwealth v. Fletcher,* 387 Pa. 602, 128 A. 2d 897 (1956).

In the present case, while the defendant made false and inconsistent statements when questioned by the police (which is, itself, a circumstance suggestive of guilt), he did not confess to the commission of the crime charged. His statement did not admit that he criminally caused the death of the deceased.

A review of the cases passed upon by this Court over the years, wherein the proof was held sufficient to warrant a conviction of murder, clearly manifests substantial differences from the evidence in the case at bar. In *Commonwealth v. Fletcher,* supra, the victim was killed from ambush by a shot gun blast. Hence, the criminal death was definitely established and, in addition, there was proof of circumstances connecting the defendant with the crime. In *Commonwealth v. Lettrich,* supra, the victim was an eight-day old child, the body of whom the defendant destroyed and burned in a furnace.[3] The corpus delicti was proved by strong circumstantial evidence and, moreover, the accused, after first making a series of false and misleading statements, broke down and made a complete confession.

---

[3] The term "corpus delicti" with respect to homicide does not mean that the Commonwealth is required to produce the body or a part of the body of the victim. See *Commonwealth v. Lettrich,* at 502.

In *Commonwealth v. Turza,* supra, the victim suffered and died from a severe blow at the base of the skull and the evidence showed the cause of death to be a multiple basal skull fracture and cerebral hemorrhage. Circumstances were shown connecting the defendant with the criminal death, including incriminating statements and admissions. In *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743 (1953), the head of the defendant's wife, severed from the body, was found encased in cement in the cellar of the defendant's home. This was adequate proof of the corpus delicti, and proof of other circumstances, including damaging admissions, clearly justified the conclusion that the defendant was the guilty party. In no case where both clear proof of a criminal death and a confession, or incriminating admissions, were lacking was the Commonwealth's case ruled sufficient.

The demurrer in this case was properly sustained. Order affirmed.