Commonwealth *v.* Jennings, Appellant.

Argued April 29, 1970.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused March 26, 1971.

*Harry F. Dunn, Jr.,* for appellant.

*Anna Iwachiw Vadino,* Assistant District Attorney, with her *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 7, 1971:

Appellant, Theodore Jennings, was indicted for the murder of Mary Fryer in the City of Chester, Pennsylvania, on November 28, 1968. He was convicted of murder in the second degree and was sentenced to a term of from six to fifteen years and to pay a fine of $1,000. From the Judgment of Sentence, defendant took this appeal.

Appellant and the deceased had lived together for eleven or twelve years prior to September, 1968, when they separated. Four children were born to them during this period. About six months prior to her death, appellant wrote a letter to the deceased in which he stated that he had purchased a gun to kill her but would not do so because he was still in love with her. Additionally, appellant had threatened and physically beaten the deceased on numerous occasions and was arrested at least four times as the result of these beatings.

The Commonwealth's evidence showed that on November 27, 1968, the night preceding the killing, Mary Fryer left her home and was seen driving away with appellant in appellant's automobile. The automobile was "zigzagging" as it left the deceased's home.

Appellant's testimony can be summarized as follows: Appellant denied seeing the deceased on the eve-

ning of November 27. Some time after midnight, in the early morning hours of November 28, 1968, Mary Fryer came to appellant's residence at 1800 West Second Street. The two shared a bottle of gin and engaged in sexual intercourse. After the deceased got out of bed and began to dress, she told appellant that she was pregnant but did not want to have the baby. She also stated that she was dying from cirrhosis of the liver and that before she died she was "going to kill you [appellant]." Appellant, upon hearing a clicking sound, turned around and saw deceased standing there pointing at him the pistol which he kept in a drawer under his bed. When she refused to respond to his pleas to drop the gun, he fell out of the bed onto the floor, and when she again said that she was going to kill him, he reached up to push the gun away from her. In the ensuing struggle the gun discharged and she fell to the floor, bleeding profusely. He put on his trousers and then picked her up and laid her on the bed. He then ran to the nearest telephone, which was two blocks down the street, to contact the police. After he had phoned the police, he ran back to his home, and after looking at the deceased, went outside to await the police.

Officers Sudler and Owens, of the Chester Police Department, arrived at appellant's residence at approximately four-thirty in the morning. Both appellant and Sudler agreed that upon their arrival appellant stated, "We struggled for the gun and it went off." After Sudler had testified that appellant told him that "he had shot her" while pointing to the left side of her neck, appellant testified that one of the officers asked him where deceased was shot and that he pointed at her and said, "She is shot there."

Appellant first contends that the Court below committed reversible error in its charge to the jury with

respect to voluntary manslaughter. The relevant portion of the charge is as follows: "Now, Members of the Jury, since Voluntary Manslaughter is embraced within the terms of the Indictment which you are considering, you must know what is meant by Voluntary Manslaughter. The crime of Voluntary Manslaughter is of a lesser grade than that of murder. It consists in the unlawful killing of another without malice, express or implied. That means without a direct intent to kill and without hardness of heart, or cruelty, or recklessness of consequences, or a mind regardless of social duty. The act of killing must, of course, be voluntary; the very name of the crime implies that; Voluntary Manslaughter. Because Voluntary Manslaughter involves an intentional act, confusion sometimes exists in the Jury's mind concerning the differences between that crime and the crime of Murder of the First Degree. If you bear in mind that Manslaughter is never attended by legal malice, that is, *by a direct intent to kill** or by depravity of heart or cruelty or recklessness of consequences, you will not go astray. Voluntary Manslaughter is wilful, but it is necessary that the surrounding circumstances take away every evidence of cruel depravity and wanton cruelty. Therefore, to reduce an intentional blow or wound which results in death to Voluntary Manslaughter, there must be either a sufficient cause for provocation, or a state of rage or passion without time to cool and placing the accused beyond the control of his reason and suddenly impelling him to do the deed. The word "passion" in the sense in which it is used here includes such things as anger or terror, provided such a degree of intensity is present as to obscure temporarily the reason of the person affected. Passion means any of the emotions of the mind,

---

* Italics throughout, ours, unless otherwise noted.

such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection.

"Under the evidence, if you are satisfied beyond a reasonable doubt that the Commonwealth has proved the essentials, you may bring in a verdict of Voluntary Manslaughter. That is a question for you and we leave this entirely within your good judgment. It is for you and you alone to determine whether, from the facts of this case, there was Murder of the First Degree, Murder of the Second Degree, or Voluntary Manslaughter, and you will have the full right to give all these factors your consideration and attention."

Appellant contends that the italicized portions of the charge were prejudicial in that they misstated the law and made it difficult for the jury to return a verdict of voluntary manslaughter. We agree that it is erroneous to charge that "manslaughter is never attended by a direct intent to kill." It is well established in this Commonwealth that voluntary manslaughter may be consistent with an intent to kill. For example, where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a direct and specific intent to kill, and yet the offense may constitute voluntary manslaughter. *Commonwealth v. Jordan*, 407 Pa. 575, 585, 181 A. 2d 310, 316; *Commonwealth v. Thompson*, 389 Pa. 382, 394, 133 A. 2d 207, 214. Moreover, a defendant may be guilty of voluntary manslaughter when he has a direct and specific intent to kill, but the killing is the result of legal passion. *Commonwealth v. Walters*, 431 Pa. 74, 82, 244 A. 2d 757, 762. See, also, *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d 289.

Appellant urges that we hold the charge was so erroneous and prejudicial that it constituted reversible error and requires the grant of a new trial. We disagree. We reiterate that instructions which inform the

jury that voluntary manslaughter cannot be attended by a direct intent to kill are erroneous and should not be given. However, after the Judge had given his charge to the jury, he asked counsel if there were any suggestions or corrections. At this time, counsel for appellant discussed the 15 points for charge which he had submitted. He withdrew 13 of them. The errors now raised on appeal were not mentioned in the two points which he did not withdraw. Nor did he object to those portions of the charge which he now assigns as error. Furthermore, appellant's failure to take a specific exception to this portion of the charge, as required by Pa. R. Crim. P. 1119(b), forecloses our consideration of this issue on this appeal.

Pa. R. Crim. P. 1119(b) provides: "(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

Before the effective date of Rule 1119(b), namely, August 1, 1968, it was well settled that in certain limited situations this Court would consider on appeal matters which were unexcepted to in the lower Court, including trial errors as well as alleged erroneous instructions. The law in this regard was well summarized in *Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301, where the Court said (pages 563-564) : "Because of fairness to all the parties to the litigation and the speedy administration of trials and of Court business, it is a well established *general rule** that an appellate Court will not reverse (1) on a point (a) *where no exception was taken** by appellant (Commonwealth v. Stowers, 363 Pa. 435, 437, 70 A. 2d 226; Commonwealth v. O'Brien, 312 Pa. 543, 168 Atl. 244; Common-

---

* Italics in *Commonwealth v. Williams* Opinion.

wealth v. Donough, 377 Pa., supra (page 53)); Leech v. Jones, 421 Pa. 1, 2, 218 A. 2d 722; Millili v. Alan Wood, 418 Pa. 154, 156, 162, 166, 209 A. 2d 817; Patterson v. Pittsburgh Railways Co., 322 Pa. 125, 185 Atl. 283; Commonwealth v. Scott, 284 Pa. 159, 162, 130 Atl. 317); or (b) to which *only a general exception was taken*\* (Commonwealth v. Smith, 374 Pa. 220, 225, 97 A. 2d 25; Enfield v. Stout, 400 Pa. 6, 14, 161 A. 2d 22; Spitzer v. P.T.C., 348 Pa. 548, 550, 36 A. 2d 503; Ellsworth v. Lauth, 311 Pa. 286, 290, 166 Atl. 855; Medvidovich v. Schultz, 309 Pa. 450, 453, 164 Atl. 338); or (2) *on a ground not raised in or by the Court below*\* (Commonwealth v. Robinson, 317 Pa. 321, 323, 176 Atl. 908; White v. Moore, 288 Pa. 411, 416-417, 136 Atl. 218).

*"However, this general rule will not be applied*\* where there is basic and fundamental error which affects the merits or justice of the case, or, as some cases express it, offends against the fundamentals of a fair and impartial trial (see cases infra, and particularly Commonwealth v. O'Brien, 312 Pa., supra, and Commonwealth v. Corrie, 302 Pa. 431, 436, 153 Atl. 743), or deprives a defendant of ' "that fundamental fairness essential to the very concept of justice," and, hence, denies him due process of law guaranteed by the Fourteenth Amendment' . . ."

Since *Commonwealth v. Williams*, 432 Pa., supra, we have been asked to review alleged, but unexcepted to, errors in the trial Court's instructions to the jury on at least two occasions, i.e., in *Commonwealth v. Myers*, 439 Pa. 381, 266 A. 2d 756, and *Commonwealth v. Bruce*, 433 Pa. 68, 249 A. 2d 346. In neither case did we discuss the effect of Rule 1119(b) on the decision or the principles set forth in *Commonwealth v.*

---

\* Italics in *Commonwealth v. Williams* Opinion.

*Williams,* supra. We now expressly hold that Rule 1119(b) did not change this law.

In the interest of the speedy and the fair administration of Justice, it is incumbent upon counsel to raise timely and specific objections at the trial so that the trial Judge may then correct any error that may have been committed. In the absence of such objections or failure to comply with the general rule set forth in *Commonwealth v. Williams,* supra, we will only review such basic and fundamental errors as, in view of the entire record, require us to conclude that one accused of a crime has been deprived of a fair and impartial trial.*

Appellant's defense was that the killing was an accident, resulting from his struggle for the pistol with which the deceased threatened to kill him. In the present case, we are unable to say that the charge, considered in the light of this record, constituted such basic and fundamental error or such an offense against the fundamentals of a fair trial as to affect the merits or

---

* For example, we deem reviewable, though no exceptions were taken, instructions which failed to charge as to the necessity of proving a defendant's guilt beyond a reasonable doubt, *Commonwealth v. Williams,* supra.

In *In Re Winship,* 397 U.S. 358 (1970), the Supreme Court of the United States held that an accused cannot be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." The Court quoted from Mr. Justice FRANKFURTER's dissenting Opinion in *Leland v. Oregon,* 343 U.S. 790, 802-03, and stated, "It is the duty of the Government to establish . . . guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process'."

However, the failure to timely object to a trial Judge's improper admonition to a defendant not to discuss his testimony with his counsel during the noon recess will preclude any inquiry on appeal. *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A. 2d 295.

Justice of the case, or that the interest of Justice requires a new trial. See cases, supra.

Appellant next contends that the trial Court committed reversible error by certain comments the Judge made to the jury concerning the deceased's familiarity with the pistol. It does not appear from the record that there was any testimony to this effect and it is true that a Judge should not comment on evidence which was not introduced at the trial. *Commonwealth v. Wilmer*, 434 Pa. 397, 254 A. 2d 24. However, appellant failed to take a specific exception to this portion of the charge, as required by Rule 1119(b), supra. Moreover, considering the charge in its entirety, the error complained of is neither basic nor fundamental, nor such as in the interest of Justice requires a new trial.

Appellant further contends that he is entitled to a new trial for the reason that he was tried without a coroner's inquest having been held. This contention must likewise fail for, as we stated in *Commonwealth ex rel. Czako v. Maroney*, 412 Pa. 448, 450, 194 A. 2d 867, "Further, an inquest is for the purpose of protecting the public interest. It is not for the protection of an offender and is definitely not a necessary ingredient of due process. A defendant in a murder case has no cause to complain that an inquest was not conducted. He has suffered no prejudice."

Appellant also contends that Rule 1116(b) of the Pennsylvania Rules of Criminal Procedure, which requires a defendant in a criminal case to present his closing argument first, is unconstitutional in that it denies the defendant, through counsel, a more effective argument before the jury. We recently discussed this attack on Rule 1116(b) and found it to be without merit. *Commonwealth v. Toney*, 439 Pa. 173, 266 A. 2d 732. See, also, *Commonwealth v. Gray*, 441 Pa. 91, 271 A. 2d 486 (1970).

28

Appellant asserts that his demurrer to the Commonwealth's evidence should have been sustained. We disagree. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Deyell,* 399 Pa. 563, 160 A. 2d 448, we are of the opinion that the evidence was sufficient to support the guilty verdict.

We have examined all of defendant's other contentions and find no merit in them.

Judgment of sentence affirmed.

Mr. Justice COHEN took no part in the decision of this case.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While I concur in the result, I do so because no specific objection was made to the charge on the point now assigned as error. As I have stated at greater length elsewhere, ". . . the basic and fundamental error test used by the majority in the instant case is too vague and lends itself to inconsistent results." *Commonwealth v. Williams,* 432 Pa. 557, 570, 248 A. 2d 301, 308 (1968) (dissenting opinion). Compare *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A. 2d 295 (1968). This case represents yet another instance of the majority's inability to apply this standard with an even hand. See, e.g., *Commonwealth v. Lowery,* 440 Pa. 361, 269 A. 2d 724 (1970); *Commonwealth v. Myers,* 439 Pa. 381, 266 A. 2d 756 (1970).

Mr. Justice JONES joins in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot agree with the conclusion reached by the majority. The only error alleged by appellant which I find meritorious involves the charge of the trial court

on voluntary manslaughter. The disputed charge is quoted in the opinion of the majority, and in my view was clearly prejudicial. As the majority points out, a conviction for voluntary manslaughter may be entirely consistent with a direct intent to kill. In its charge the trial court apparently confused specific intent, an absolute essential of voluntary manslaughter, with malice, the absence of which distinguishes voluntary manslaughter from murder. The court did correctly advise the jury that it should examine the surrounding circumstances to determine whether, if the appellant had committed an intentional act in shooting the decedent, he had done so with the particular hardness of heart, or cruelty, or recklessness of consequences which constitutes malice or whether, on the other hand, his mental state was one of passionate emotion due to anger, rage, or terror, which rendered his mind incapable of cool reflection.

However, by emphasizing to the jury that if they "bear in mind" that manslaughter is never attended by direct intent to kill, the court made it difficult for a jury to find a verdict of manslaughter if it also found that appellant intended decedent's death.

I agree with the majority that Rule 1119(b), Pennsylvania Rules of Criminal Procedure, did not change the law enunciated by us relative to general and specific exceptions to charge. I part company with the majority, however, in its determination that the error in charge did not constitute basic and fundamental error.

Since I believe that the charge contained fundamental error, I would not allow the verdict to stand and I would reverse the judgment of sentence and remand the case for a new trial.

Mr. Justice EAGEN joins in this dissenting opinion.