Commonwealth, Appellant, *v.* Peggs Run Coal Company.

Argued April 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Patrick C. McGinley,* Special Assistant Attorney General, with him *Wayne S. Lipecky,* Assistant District Attorney, and *Joseph S. Walko,* District Attorney, for Commonwealth, appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY WATKINS, P.J., February 27, 1975:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Beaver County, sustaining a demurrer to the Commonwealth's evidence in the alleged violation of the Clean Streams Law by the defendant-appellee, Peggs Run Coal Company. The Grand Jury of Beaver County handed down an indictment against Peggs Run Coal Company for discharging industrial waste in violation of its permit alleging that debris and silt-laden water was discharged from the company's impounding lagoons into Peggs Run.

The defendant waived jury trial and the case was heard before the Honorable Frank E. REED, P. J., Specially Presiding. At the conclusion of the Commonwealth's case, the trial judge sustained a demurrer to the evidence. This appeal by the Commonwealth followed.

Peggs Run Coal Company owns and operates a coal mine in Beaver County. Part of the mining operation includes the use of impounding lagoons for aeration and settling treatment of mine drainage. After treatment, the company discharged the mine drainage into Peggs Run, a tributary of the Ohio River. The objective of the settling treatment is for the removal of silt, rock and other debris which is to be settled and stored in the impounding lagoons.

A first violation of the Clean Streams Law is a summary offense; a second violation within two (2) years is a misdemeanor. The appellant was found guilty of violating the law on September 8, 1972 and so the present action is brought as a misdemeanor. The law provides in Section 691.602 (a): "Any person . . . who violates any provision of this act . . . is guilty . . . of summary offense . . .", and in Section 691.602 (b): "Any person . . . who, after a conviction in a summary proceeding within two years as above provided, violates any provision of this act . . . is guilty of a misdemeanor . . .". Act of June 22,

1937, Act 394, P.L. 1987, as amended 35 P.S. §691.1, et seq. (Clean Streams Law).

The Act, supra, requires, inter alia, that a mine operator obtain a permit from the Department of Environmental Resources before discharging industrial waste such as silt, etc., into Pennsylvania waters. Section 691.1 of the Act defines industrial waste as follows: ". . . any liquid . . . solid or other substance, not sewage, resulting from any manufacturing or industry . . . and mine drainage, silt, coal mine solids, rock, debris, dirt and clay from coal mines, coal collieries . . . 'Industrial waste' shall include all such substances whether or not generally characterized as waste."

A Mine Operator's Permit #368M016 was issued by the Department of Environmental Resources to the appellee pursuant to an application under the Clean Streams Law. These permits are subject to mandatory standard conditions which must be complied with. Standard Condition #3 required that: "No silt, coal mine solids, rock, debris, dirt and clay shall be washed, conveyed or otherwise deposited into the waters of the Commonwealth." The appellees permit was subject to this condition.

A prima facie case of violation of this law would require a showing that: 1) the department issued a permit; 2) evidence of the conditions included in the permit; and 3) proof of actions contrary to the permit conditions. The Commonwealth introduced into evidence a copy of permit #368M016 issued by the Department to the company. The Commonwealth introduced a copy of "Standard Conditions accompanying permits authorizing the operation of coal mines." Testimony was admitted explaining the conditions and that the permit was subject to Standard Condition #3 referred to hereinabove.

Environmental Protection Specialist John Davidson made inspection on three occasions in 1972: January 10, February 17 and March 18. He testified that at the January and February inspections he took water samples

from the discharge point of the third settling dam and sent them to the department's laboratory in Harrisburg for chemical analysis. Both samples showed suspended solids in the discharge samples taken. At the March inspections, samples showed a high proportion of settlements and suspended solids.

The witness also testified that on March 18, 1972, the first and second settling ponds or lagoons were "completely filled with silt and provided no settling for silt". The third pond was nearly filled and witnesses testified that at the point of discharge, the water was very black from that point to the Ohio River. The record also discloses actual admissions by an agent of the company that the company was discharging silt from the lagoons into the river.

While reviewing the evidence and all reasonable inferences flowing therefrom, in the light most favorable to the Commonwealth, the Court must determine whether the facts—taken as true for the purposes of the demurrer—are sufficient to put the defendant to a defense. *Commonwealth v. Deyell,* 399 Pa. 563, 565, 160 A. 2d 448 (1960). This record discloses ample evidence of a prima facie case that could clearly support a guilty verdict.

The order of the court below is reversed and the case remanded for trial.