## Craig Estate

*James A. Kudasik* and *Jon A. Barkmen,* for petitioner.

*Alexander Ogle,* for respondent.

COFFROTH, *P. J.,* August 25, 1976 — This is a declaratory judgment proceeding which is here for decision on the merits following a nonjury trial. We decided several legal questions when the case was here before on preliminary objections to the petition: Craig Est., 30 Somerset 377 (1975). There it was concluded that declaratory relief was appropriate and the preliminary objections were overruled. It was also held that the rules of civil procedure are generally inapplicable to declaratory judgment proceedings which are governed by the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq. Section 6 of the Supplement to that Act, May 22, 1935, P.L. 228, 12 P.S. §852, provides that after a nonjury trial "all issues of fact, as well as those of law, may be determined and found by the court, subject to exceptions and appeal, as in equity cases." Therefore, the equity rules of civil procedure are applicable at this stage of the case: Guerra v.Galatic, 185 Pa. Superior Ct. 385, 389, 137 A. 2d 866 (1958), and our decision must be in the form of an equity adjudication as prescribed by Pa. R.C.P. 1517.

## THE ISSUES

The petition for declaratory judgment arises out of disputes between the parties respecting the

right to administer a decedent's estate and the right of respondent to take beneficially in distribution. The petition seeks a judgment declaring that:

(1) The register of wills did not abuse his discretion in granting letters to petitioner;

(2) Decedent was domiciled in Pennsylvania at death; and

(3) Respondent is decedent's slayer and is barred from taking as distributee by slayer provisions of the Decedents, Estates and Fiduciaries Code of June 30, 1972, P. L. 508 (No. 164), 20 Pa.C.S.A. §8801 et seq.[1]

As pointed out in footnote [8] of the prior opinion, 30 Somerset 399, domicile is important in determining whether the law of Virginia or of Pennsylvania will govern the administration and distribution of the personal estate. Inheritance of land and its devise by will are governed by the law of the state where the land is: Restatement 2d Conflict of Laws, §245 (intestacy), and §249 (testacy). A state's slayer statute relates to distribution.

There are, therefore, three issues here:

(1) Was decedent domiciled in Pennsylvania at the time of her death?

(2) Is respondent the slayer of decedent within the terms of the Pennsylvania slayer statute?

(3) Should the letters of administration with the will annexed issued by the register of wills of this county to petitioner be revoked, and letters testamentary granted to respondent as the executor named in the will?

---

1. The Probate Code became effective July 1, 1972, superseding the essentially similar provisions of the Act of 1941, P.L. 816, 20 Pa.C.S.A., Appendix, §3441 et seq.

## FACTS

Mrs. Verdie Florence Craig, decedent, lived in Virginia with her husband prior to 1969; he died several years before. In 1969, she and Harry L. Bamber, respondent in these proceedings, took up residence together; Mrs. Craig was then about 68 years old and respondent was about 52. They lived together until her death in 1973.

In 1969, Mrs. Craig owned a home in Virginia and several small parcels of unimproved land. In that year she sold her home and she and respondent went to Florida for about two weeks. They then went to Circleville, West Virginia, where they lived for a year or more in a rented dwelling. From there they moved to Durbin, West Virginia, where Mrs. Craig bought a home in which they lived. In early 1972, she sold that home and moved to Addison Township, Somerset County, Pennsylvania, where they lived in a rented home for several months near Addison Borough. In January of 1973, Mrs. Craig purchased a home in the village of Listonberg, Addison Township, Somerset County, which, in February, 1973, she conveyed to respondent. They moved to that home early in 1973 and were living there at the time of her death in June, 1973.

There were two adjacent buildings on the Listonberg property. Mrs. Craig and Bamber lived in one of them, and they were making improvements to the other and were expecting to move into it later in the year.

Neither Mrs. Craig nor respondent owned or otherwise held any place of residence other than those above mentioned, during the period of time referred to.

Respondent was in the business of buying and selling furs in Pennsylvania, Maryland, West Virginia and Virginia, and he and Mrs. Craig made frequent business trips to those states. They stayed in motels or hotels during those trips.

In 1957, Mrs. Craig had made a will giving her residence as Shenandoah, Virginia. In 1970, she made a will stating her residence as Circleville, West Virginia. Her last will made in March, 1972, says that she is of Durbin, West Virginia; it gives her entire estate to respondent and appoints him sole executor. In June, 1973, she bought a Ford truck; Addison, Pennsylvania is her address on the registration.

Mrs. Craig was killed in June, 1973, and respondent was convicted in this court of her voluntary manslaughter: Commonwealth v. Bamber, 463 Pa. 216, 344 A. 2d 799 (1975). On June 27, 1973, Dorman A. Delawder, Mrs. Craig's brother and the petitioner in these proceedings, probated her will in Shenandoah County, Virginia, and was appointed her administrator there. On May 16, 1975, petitioner applied to the register of wills of this county for letters of administration with the will annexed alleging: "The named executor is unfit to serve due to incarceration in prison." That application was granted and the letters were issued May 21, 1975.

On June 24, 1975, the present petition for declaratory judgment was filed by Delawder as petitioner against Bamber as respondent. Thereafter, but on the same day, respondent filed an application to revoke the letters issued in this county to petitioner. . . .

The evidence permits only one reasonable conclusion on the issue of domicile: decedent was

domiciled in Addison Township, Somerset County, Pennsylvania at the time of her death and we so find.

## RESPONDENT AS SLAYER

The question here is whether respondent's final conviction of the voluntary manslaughter of decedent disqualifies him from taking under Pennsylvania's Slayer Act which provides that:

"No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent . . ." 20 Pa. C.S.A. §8802.

The term "slayer" means

". . . any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person.": 20 Pa. C.S.A. §8801.

Voluntary manslaughter is a crime and is, therefore, an *unlawful* killing. Voluntary manslaughter is also regarded as a felonious homicide: Commonwealth v. Edwards, 448 Pa. 79, 83, 292 A.2d 361 (1972); Commonwealth v. O'Neal, 441 Pa. 17, 21, 271 A. 2d 497 (1970); see also: Commonwealth v. Wucherer, 351 Pa. 305, 310, 41 A. 2d 574 (1945); Commonwealth v. Kluska, 333 Pa. 65, 71-2, 3 A. 2d 398 (1939).

The question is whether voluntary manslaughter is a *wilful* killing. In Commonwealth v. Bamber, 181 Criminal 1973, opinion of 2-19-74 denying defendant's (this respondent's) post verdict motions following the jury verdict finding him guilty of the voluntary manslaughter of decedent, we said:

"Our Supreme Court usually defines voluntary manslaughter as a homicide 'intentionally committed (Commonwealth v. Kirkland, supra) [413

Pa. 48], or an 'intentional killing' (Commonwealth v. Edwards, 448 Pa. 79; Commonwealth v. Flax, supra) [331 Pa. 145]. See also PLE Homicide, section 32. The precise character of the intention required in voluntary manslaughter has not been discussed in depth in the Pennsylvania authorities, but quite obviously both of the above quoted phrases mean more than mere volitional acts; they mean also that death was a desired or intended result of the voluntary (intentional) acts. And the jury would naturally infer from those phrases that a specific intention to kill was a necessary ingredient of voluntary manslaughter; in fact, the trial judge expressly stated that: 'Voluntary manslaughter is a killing of a human being without legal justification, *committed with the intention of taking life* but without malice, and under the influence of sudden passion resulting from serious provocation.' (Emphasis added). That instruction is in full accord with Commonwealth v. Miller, 448 Pa. 114, 125, footnote 4, which says that in voluntary manslaughter the specific intent to kill 'is always present,' and with Commonwealth v. Zapata, 447 Pa. 322, 328, which says that an instruction that voluntary manslaughter can be committed without a specific intent to kill 'is incorrect.' In Commonwealth v. Jennings, 442 Pa. 18, it was held that a statement in the charge that voluntary manslaughter is 'never attended by a direct intent to kill' was error, because 'voluntary manslaughter may be consistent with an intent to kill'."

"When measured against the above authorities, a statement in Commonwealth v. Moore, 398 Pa. 198, 202 footnote 2, poses some difficulty for those engaged at the trial level. It says that the 'specific

intent that death shall result is not essential to a finding of voluntary manslaughter,' and that 'either a specific intent to kill or to seriously injure' is sufficient."

See also 40 Am. Jur. 2d Homicide, §56 (1968); Summary of Pennsylvania Jurisprudence, Criminal Law, §151. Some authorities hold that reckless conduct may be sufficient to support a conviction of voluntary manslaughter: 40 C.J.S., 904, §44; Model Penal Code, Proposed Official Draft, Section 210.3; see also Commonwealth v. Fetzner, 25 Erie 403 (1944), and Commonwealth v. Kimmel, 28 Somerset 50, 61 (1972). Compare Crimes Code, section 2503, 18 Pa. C.S.A. 2503, defining voluntary manslaughter.

Whatever may be the precise legal definition of voluntary manslaughter in the criminal law, it seems settled that the legislative intent of the language of the Pennsylvania slayer statute was to include voluntary manslaughter within the phrase "wilful and unlawful killing" as used therein. See Moore v. Prudential Ins. Co., 342 Pa. 570, 576, 21 A.2d 42 (1941), footnote 3 and Reporter's Note thereto; Paul Est., 28 D. & C. 2d 651, 655-6 (1962); see also 49 Harvard Law Review 715, 722-3, and 46 Dickinson Law Review 99, 101. This proposition is not seriously challenged by respondent. As stated in section 8815 of the Decedents, Estates and Fiduciaries Code, 20 Pa. C.S.A. §8815:

"This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed."

The record of respondent's conviction of the voluntary manslaughter of decedent is a conclusive

determination of his guilt of that crime and, therefore, is a conclusive bar upon his right to take any portion of the decedent's estate: Kravitz Est., 418 Pa. 319, 211 A. 2d 443 (1965). The question may not be relitigated here: Kravitz Estate, supra; Glenn Est., 450 Pa. 461, 464, 299 A. 2d 203 (1973). Nor has respondent attempted to do so.

We conclude that respondent is the decedent's slayer and is barred from sharing any part of her estate or succeeding to any part of her property under the will made in his favor or otherwise.

## PETITION TO REVOKE LETTERS

Respondent's petition to revoke the letters of administration with the will annexed granted in this county to petitioner has been certified to the court under section 907 of the Decedents, Estates and Fiduciaries Code, 20 Pa. C.S.A. §907, for determination by the court of the issue in dispute. That issue has been incorporated into the declaratory judgment proceeding as explained in our prior opinion in 31 Somerset 377, 391, 399.

Respondent's petition to revoke the letters granted to petitioner herein denies incarceration at that time, asserts his fitness to serve as executor, and claims the appointment as a matter of right by virtue of decedent's will.

Section 3155(a) of the Decedents, Estates and Fiduciaries Code recognizes the right of a named executor to letters, and states:

"Letters testamentary shall be granted by the register to the executor designated in the will, whether or not he has declined a trust under the will."

Fitness of a named executor to serve is presumed from the fact that the decedent selected him, and

546

his fitness is not subject to question or review by the register as it is in the case of issuance of letters of administration. Section 3156(3) of the Code clearly states that one may not serve as a personal representative who is

"A person, other than an executor designated by name or described in the will, found by the register to be unfit to be entrusted with the administration of the estate." See also 2 Hunter' O. C. Executors and Administrators (2d ed.) §2(b), 25 (Bisel, 1959).

There is no express disqualification of the decedent's slayer from serving as personal representative (see Code, sections 3155 through 3157), nor is that a stated ground for removal under section 3182. Nevertheless, it has been held that decedent's slayer is unfit to serve as administrator, and even to nominate an administrator in his or her place, under the statutory predecessor to section 3156(3) supra: Kravitz Est., 22 D. & C. 2d 122 (1959). But we find no Pennsylvania authority on the point respecting a named executor who is a slayer.

We think the question is settled, however, by section 8802 of the Code, quoted supra, denying the slayer *"any benefit"* as the result of the death, and by section 8815, quoted supra, expressing the strong public policy that no slayer "shall be allowed to profit by his own wrong." These sections require that a named executor who is decedent's slayer be disqualified from serving. The same result was reached in Maxcy Est., 240 So. 2d 93, 95 (Florida 1970). That was an appeal from an order awarding executor's fees, where the court said:

"There is another and more overpowering reason why these unnecessary and duplicating fees should have and could have been avoided. That is

simply that the widow should never have been appointed co-executor in the first place. The County Judge found in so many words in the orders appealed here that the widow 'was involved in the planning of the murder of her late husband'. The rationale of Florida law distinctly frowns upon a person in the position of the instant widow profiting in any manner from the estate of the murdered decedent. . . . If the County Judge had refused to appoint her co-executor in the beginning, even though she was named in the will, such refusal would have been proper." See also 33 C.J.S. 909, §28, n. 71.5.

## DECREE NISI

Now, August 25th, 1976, It is ordered, adjudged and decreed as follows:

1. Decedent, Verdie Florence Craig resided and was domiciled in Addison Township, Somerset County, Pennsylvania at the time of her death in June, 1973.

2. Respondent, Harry L. Bamber, is the slayer of decedent, Verdie Florence Craig, within the terms of the Pennsylvania Decedents, Estates and Probate Code, sec. 8801, 20 Pa. C.S.A. §8801, and is prohibited and disqualified from acquiring any property or receiving any benefit in the estate of Verdie Florence Craig, deceased, under her will or otherwise as a result of her death.

3. Respondent, Harry L. Bamber, is disqualifed from serving as executor of the estate of Verdie Florence Craig, deceased, and his petition to revoke the letters of administration with the will annexed granted by the Register of Wills of Somerset County, Pennsylvania to petitioner, Dorman A. Delawder, is dismissed.

548

4. The parties shall pay their own costs.

Unless exceptions are filed within twenty (20) days as provided in Pa. R.C.P. 1518, this Decree Nisi shall be entered by the clerk as the final decree pursuant to Civil Rule 1519.