# Commonwealth v. Palo

C.P. of Fayette County, no. 1130 of 2009.

*Robert Eugene Grimm, assistant district attorney,* for Commonwealth.

*Dianne Zerega,* for defendant.

LESKINEN, *J.,* December 1, 2010—Before this court are the "concise issues under Pa.R.A.P. 1925(b)" filed by defendant, Richard Jason Palo ("Palo"). Palo was convicted by a jury of burglary and theft by unlawful taking. After the jury's verdicts, this court found Palo guilty of the summary charge of criminal mischief. A timely appeal followed.

The complaints contained in the "concise issues under Pa.R.A.P. 1925(b)" are:

1. The evidence presented was insufficient to establish that the defendant was guilty of the crimes charged beyond a reasonable doubt, in that the Commonwealth presented only testimony of a disgruntled former girlfriend to testify that the defendant was in any way connected with this crime.

2. The trial court erred when it permitted the

introduction of the prior conviction of a witness, when that conviction was more than ten years old, the Commonwealth had provided no prior written notice that it intended to use the prior conviction, and the use of the prior conviction was extremely prejudicial to the defendant.

The evidence was clearly sufficient for the jury to find Palo guilty of the charges of burglary and theft by unlawful taking. This court believes it properly exercised its discretion in admitting the remote prior conviction of Palo's mother/alibi witness because the probative value of that evidence outweighed the prejudicial effect and the notice of intent to use the prior conviction was sufficiently timely under the circumstances of this case to prevent unfair prejudice.

## Background

The Commonwealth presented testimony to show that on April 4, 2009, Lizza's Apothecare Pharmacy, a retail pharmacy located in Uniontown, Fayette County, Pennsylvania was burglarized by Palo and his uncle Scott Sullivan[1] (hereinafter "Sullivan"). The burglars broke into and entered the Pharmacy using the "drive-through" window, causing extensive damage to the window and frame. Lizza testified that it cost "around fifteen hundred dollars" to repair the window and frame (Tr. 07/07/10, pp. 23). While inside the burglars ransacked the shelves,

---

1. At Sullivan's guilty plea proceedings, which occurred after this trial, he denied that Palo was involved in the burglary, and specifically named two other individuals as participants. The following is an excerpt from Scott Sullivan's Plea Proceedings:
The court: Alright. But you did with a co-conspirator or two co-conspirators did break into that pharmacy and take the drugs?
Mr. Sullivan: Yes, sir. (Plea Proceedings 07/28/10, pp. 28).

4

and used black garbage bags to haul away selected items. Lizza determined with reasonable certainty that the controlled substances[2] taken from his pharmacy were fairly valued in an amount of $7,004. Lizza estimated that the non-controlled substances that were taken were in the approximate amount of $1,108. The day after the burglary Lizza prepared a "theft report" for the Drug Enforcement Agency itemizing the loss of the controlled substances, which was marked as Exhibit 2 and admitted.

Lizza reviewed the surveillance camera video, which showed the burglary. Lizza knew Sullivan as a person who had been in the pharmacy, and recognized him despite the mask he was wearing. On April 5, 2009 Officer Thomas Kolencik arrested Sullivan based on the identification made by Lizza. A search incident to arrest yielded pills and bulk pill bottles on Sullivan's person. At trial, Exhibit 3 was a list of the items found on Sullivan. The list includes: Exhibit 4, Lorazepam tablets, Exhibit 5, Hydrocodone tablets, and Exhibit 6, Lonox tablets. Exhibit 2 (the theft report that Lizza provided the Drug Enforcement Agency) was consistent with Exhibits 3, 4, 5, and 6. Sullivan ultimately plead guilty to the charges, but not until after the trial in this case.

Palo was tied into the burglary as the result of the statements and testimony of his former girlfriend and the mother of his child, Charlotte Thorpe (hereinafter "Thorpe"). She testified that she saw Palo and Sullivan together on April 4, 2009, at around 4:30 p.m. Thorpe testified that "[h]e (Palo) just pretty much came over and

---

2. Controlled substances are labeled with a "C-Stamp." The "C-Stamp" identifies the contents as drugs that have a high potential for abuse.

I was outside, and he was telling me that he wanted to rob a pharmacy, and I told him that there were other ways of earning money" (Tr. 07/07/10, pp. 28). Later in the evening, after the burglary occurred, Thorpe testified that she saw Palo again, at her mother's house. Thorpe testified that "Um, he came there (Thorpe's mothers house) and he told me to come out to the car and he showed me the pills, they were in black garbage bags" (Tr. 07/07/10, pp. 31). Sullivan again was in the car. Thorpe saw Palo take a prescription bottle out of the black trash bag. Lastly, Thorpe testified that Palo told her he burglarized the Apothecare Pharmacy (Tr. 07/07/10, pp. 36)

Palo, as part of his defense, put on the stand Catherine Whetzel (hereinafter "Whetzel"), who was Palo's girlfriend at the time of the burglary. Whetzel testified about threats that Thorpe made against Palo, specifically:

"....she did clearly say to me that if she couldn't have him, that no one else could, that she would do what she needed to do. She would call the cops and tell them that he has hit her to put him in jail, and if she needed to put him in jail, she would make up any lie that she needed to do to put him there" (Tr. 07/07/10, pp. 64).

Palo's mother, Rosemary Frazee, (hereinafter "Frazee") was called as an alibi witness. Specifically, Frazee testified that ".... I get off 5:00 o'clock everyday, and by the time that I get home, it is somewhere between 5:30 and 6 o'clock, and I remember coming home because I stopped to put my cards out, and my son and his son were at the house...." (Tr. 07/07/10, pp. 75). Frazee further testified that she was with Palo and his son from the time she got home until the time she left to go to bingo at 10 p.m. Lizza testified

that on April 4, 2009 he was notified by his Pharmacy's alarm that there was activity at "9:00 o'clock, 9:30" (Tr. 07/07/10, pp. 21). Thus, the time frame that Frazee says she was with Palo was the same time that the pharmacy was burglarized.

After Frazee testified, for purposes of impeaching Frazee's testimony, the Commonwealth offered evidence of Frazee's previous convictions for *crimen falsi* (crimes of falsehood). The defense objected because of the age of the convictions. After argument over the lunch recess, this court ruled that the convictions could be presented as impeachment evidence pursuant to Pennsylvania Rules of Evidence (Pa.R.E.) 609(b). Thereafter, the Deputy Clerk of Courts for Fayette County testified "that on April 8, 1992, Rosemary Palo (Rosemary Frazee) pled guilty to criminal conspiracy to commit robbery, theft by unlawful taking and receiving stolen property" (Tr. 07/07/10, pp. 102).

Palo was convicted of burglary, theft by unlawful taking and criminal mischief on July 8, 2010. On July 15, 2010, this court sentenced Palo to not less than one year nor more than three years in a state correctional institution. On August 11, 2010, Palo, through his attorney, Dianne H. Zerega, filed the notice of appeal currently at issue.

## Discussion

In evaluating a challenge to the sufficiency of the evidence, the court must view the evidence in the light most favorable to the Commonwealth, as verdict winner, together with all reasonable inferences therefrom, and determine whether the trier of facts could have found

that each and every element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Rawles*, 501 Pa. 514, 462 A.2d 619 (Pa. 1983). The test requires that the court make a finding that the evidence supporting the verdict of guilt is so weak and inconclusive that a factfinder could not be satisfied as to the guilt of the defendant beyond a reasonable doubt. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (Pa. 1973). *Commonwealth v. Anthony*, 546, 453 Pa. 481, A.2d 1222 (Pa. Super. 1988).

Further, it matters not whether the appellant finds a witness's testimony lacking credibility; matters of credibility are solely within the province of the jury as trier of fact, and, as such, "will not be assailed on review...." *Commonwealth v. Jackson*, 645 A.2d 1366 (Pa. Super. 1994).

The relevant question is "whether accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict; it would be nonetheless insufficient in the law to find beyond a reasonable doubt that the appellee is guilty of the crime charged." *Commonwealth v. Ponder*, 393 A.2d 1235 (Pa. Super. 1978) citing *Commonwealth v. Froelich*, 458 Pa. 104, 326 A.2d 364 (Pa. 1974).

Here, Palo asserts that the evidence presented was insufficient to establish that he was guilty of the crimes charged beyond a reasonable doubt, in that the Commonwealth presented only testimony of his former girlfriend, Thorpe, to testify that Palo was connected with this crime.

Palo points out that Catherine Whetzel testified that

Thorpe admitted she would lie to get Palo in jail. In addition, Palo had an alibi provided by Frazee, as noted in the authorities cited above, however, the evidence must be viewed in the light most favorable to the verdict winner. Conflicts in the testimony and the credibility of each witness's testimony was for the jury to decide, and they evidently accepted Thorpe's testimony despite the opposing evidence.

Accepting as true all of the Commonwealth's evidence and all reasonable inferences derivable therefrom, the jury had ample evidence to support its verdicts of guilty of burglary and theft by unlawful taking. Under the Pennsylvania Crimes Code, burglary occurs when a person enters a building or occupied structure, or separately secured or occupied portion thereof, with the intent to commit a crime therein. Here, the burglars pried the drive through window of the pharmacy open and entered the pharmacy with the intent to commit theft by unlawful taking, and did so. The pharmacy was not open to the public, as they entered the pharmacy around 9 p.m. which was after business hours (Tr. 07/07/10, pp. 28).

Under the Crimes Code a person is guilty of theft by unlawful taking if he unlawfully takes, or exercises control over, moveable property of another with intent to deprive him thereof. Under the evidence, Sullivan and Palo took drugs from Lizza. After the burglary, Thorpe saw Palo in possession of the drugs dividing them up for some purpose, which is circumstantial evidence of intent to permanently deprive (Tr. 07/07/10, pp. 34). Thus, the convictions of burglary and theft by unlawful taking were supported.

Lastly, under the Crimes Code a person is guilty of criminal mischief if he damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe). Here, as mentioned above, the burglars intentionally pried open the drive through window of the pharmacy causing extensive damage of approximately fifteen hundred dollars.

Palo's second assertion is that it was error to permit the introduction of the remote prior conviction of his mother/ alibi witness, when that conviction was more than ten years old and the use of the prior conviction was extremely prejudicial to Palo.

Pa.R.E. 609(b) provides that:

"Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect."

The record suggests Frazee was released "from the confinement imposed for that conviction" in 1993, therefore it was more than ten years before she testifed.

In *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (Pa. 1973), the Pennsylvania Supreme Court implemented a balancing approach to replace the prior rule of automatic admissibility for all prior convictions. In *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (Pa. 1987), the Supreme

Court reinstated a rule of automatic admissibility for convictions less than ten years old, but retained the balancing test for convictions over ten years old. The common law balancing test enunciated in *Bighum* provided that a conviction would be excluded if its probative value was outweighed by the risk of unfair prejudice. Pa.R.E. 609(b) provides that the conviction must be excluded unless the court finds that the probative value substantially outweighs the prejudicial effect of the conviction. This court applied the balancing test when it admitted Frazee's prior conviction.

*Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (Pa. 1978), lists the factors to be used in applying the balancing test. The factors listed in *Roots* are not exclusive, but illustrate the types of considerations that should guide the decision. One of the factors listed is "the strength of the prosecution's case and the prosecution's need to resort to this evidence compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented."

This court held:

"the court had made the ruling based on a balancing test that since Mrs. Frazee's testimony was very strong for the defense and that the Commonwealth did not have much of anything to impeach her testimony with other than the fact that she is the mother of the defendant, the court concluded that the probative value does outweigh the potential prejudicial effect, but more so since the witness is not the defendant, it is in fact the alibi witness" (Tr. 07/07/10, pp. 96).

As noted above, the defense also presented strong

testimony by Whetzel directly impeaching the principal Commonwealth witness. The Commonwealth had no evidence to impeach Whetzel except for her admitted intimate relationship with Palo. The defendant could have provided his own alibi testimony, or could have avoided presenting alibi testimony altogether. He had strong defense testimony without calling his mother to provide an alibi. In retrospect, his chances for exoneration would probably have been better without his mother's testimony and the impeachment that followed it.

Without the remote convictions, it would have appeared to the jury that the only witness tying Palo to the crimes was directly contradicted by two credible and unimpeachable witnesses. The remote convictions were very damaging to the defense, and in that sense, prejudicial—but use of the remote convictions was not *unfairly* prejudicial. Admitting that evidence merely allowed the jury to balance that impeachment of the alibi witness against the strong impeachment evidence the defense presented against the principal Commonwealth witness. Under the circumstances here, denying the Commonwealth the ability to impeach Frazee would not have been fair to the prosecution.

Palo also asserts independently that this court erred when it permitted the introduction of Frazee's prior convictions because the Commonwealth did not provide prior written notice that it intended to use the prior conviction. Pa.R.E. 609(b) provides that:

"...evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives the adverse party sufficient advance written notice

of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

"Comment 6" to Pa.R.E. 609(b) provides that "Paragraph 609(b) codifies a discretionary rule." This court ruled:

"Mrs. Frazee's name was listed in the notice of alibi given to the prosecution, however, the prosecution was unaware that Mrs. Frazee was the defendant's mother, based on that notice, and did not have her Social Security Number or maiden name in order to do a record check. However, this is now approximately 1:35, and the potential for impeaching Mrs. Frazee's testimony with this prior conviction was discussed with counsel at about noon, a little over an hour and half ago, and a written notice of intent to use such evidence has not been given, and [but] the court is of the opinion that the adverse party has had a fair opportunity to contest the use of such evidence in that it has been discussed [and argued]" (Tr. 07/07/10, pp. 95-96).

What the undersigned meant was that the admissibility of the evidence was, in fact, contested on its merits prior to admission; therefore, adequate advance notice must have been given even if not given in writing. The Commonwealth did not have advance knowledge of the witness' prior criminal record because the name she used at the time of those crimes was not provided in the alibi notice. The only reason the Commonwealth even knew her name is because she was an alibi witness—had her testimony been on any other issue, the Commonwealth wouldn't even have known her name until after she

testified. The rule does not require an advance written notice that is impossible or impracticable to give.

No issue of authenticity of the criminal record has been raised, so more time and a written notice would not have made any difference. By calling a witness with a significant criminal record, even an old one, the defense took the risk that the criminal record would be used to impeach. Under the circumstances of this case, the court could not allow the defense a free hand to attack the credibility of the witness for the prosecution while unfairly tying the Commonwealth's hands.

## CONCLUSION

For the reasons discussed above, this court found that the evidence was sufficient to allow the jury to find Palo guilty of all charges. Similarly, this court also found that the remote conviction was appropriate impeachment of the alibi witness pursuant to Pa.R.E. 609.